## LAWRENCE et al. v. HENNESSY et al., Appellants.

### Division One, December 17, 1901.

1. **Franchise from City:** TRANSFER BY MORTGAGE: "APPURTENANCE." Where a gas company, which has a valid franchise from a city granting it the right to use the streets for its pipes and mains, by a deed of trust conveys all its property, "with all the right, privilege and appurtenances thereunto belonging," and that deed of trust is foreclosed, the franchise passes to the purchaser, and a deed by him conveying all the property "with all and singular the rights, privileges and appurtenances and immunities thereto belonging or in anywise appertaining" also carries the franchise to his vendee. In such case, the franchise, the right to use the streets for its mains and pipes, is a necessary appurtenance to the business of the gas company.

2. ————: HOW TRANSFERRED. A franchise to a company to use the streets of a city for laying pipes for supplying gas, etc., may be transferred by a general deed conveying all the company's property and its appurtenances, or it may be made by a separate instrument assigning the ordinance or a certified copy thereof which created the franchise.

3. ————: ————: CONSENT OF VOTERS. Where the council of a city of the third class has authority to grant a franchise for the use of the streets for supplying the citizens with gas, without consent of the voters and does so, the grantee thereof is not barred from transferring and assigning that franchise because the law is subsequently amended so as to require the consent of the voters before the council can grant such a franchise.

Appeal from Jasper Circuit Court.—*Hon. Jos. D. Perkins,* Judge.

AFFIRMED.

*W. B. Teasdale, Clarence S. Palmer* and *Fred H. Wood* for appellants.

(1) Procuring a franchise by plaintiffs was made, by the contract, an essential part of the consideration for payment

by Hennessy and Massie. It was a condition precedent. (2) Plaintiffs can not recover without showing performance, or that performance was waived by the other parties. 7 Am. and Eng. Ency. of Law (2 Ed.), 145; Eyerman v. Mt. Sinai Ass'n, 61 Mo. 489; Railroad v. Boestler, 15 Iowa 555. (3) The existence of ordinance No. 93, and taking possession of the physical plant could not constitute a waiver, because: (a) Plaintiffs did not own the rights created by ordinance No. 93. Hovelman v. Railroad, 79 Mo. 632. (b) They did not agree to convey such rights, but did agree to procure a new franchise. (c) They did not convey such rights to Hennessy and Massie, nor to any person or corporation for their benefit. (d) The record shows that ordinance No. 93 was never considered by the plaintiffs, nor by Hennessy and Massie, until long after the suit was brought. (4) Ordinance No. 307 did not grant a franchise, because the law requiring a submission to vote of the people was not complied with. Session Laws 1893, p. 85, sec. 95; Hanson v. Light Co., 48 N. W. 1005; State ex rel. v. Murphy, 130 Mo. 10. (5) There was no waiver by Hennessy and Massie by reason of their connection with ordinance No. 307. They smply informed Mr. McReynolds of the provisions which they wished embodied in regard to price. The contract provided that plaintiffs "should procure a franchise from the city of Carthage," and Hennessy and Massie had nothing to do with explaining the ordinance to the council until Mr. McReynolds requested Hennessy to attend the adjourned meeting. Hennessy and Massie left the obligation where the contract placed it with the plaintiffs. They could not waive compliance with the law. Operation of a gas plant without a franchise was unlawful; and the agreement with plaintiffs that they should be paid in bonds secured by mortgage on what they conveyed to Hennessy and Massie caused plaintiffs to participate in the illegality caused by their own failure to comply with their contract. Downing v. Ringer, 7 Mo. 585; Friend v. Porter, 50 Mo. App. 89; Curran

v. Downs, 3 Mo. App. 468; Curran v. Downs, 7 Mo. App. 331; Bishop on Contracts, secs. 470, 471, 476, 549; Parsons on Contracts (7 Ed.), 486; Sprague v. Rooney, 104 Mo. 349. (6) There was no waiver by reason of the fact that Hennessy and Massie took possession of the physical plant and expended their money in making improvements thereon. (a) At the time of taking possession no effort had been made to transfer the stock in the Incandescent Gas Light and Fuel Company, or the rights attempted to be acquired by ordinance No. 307. Hennessy and Massie had the right to take possession, relying upon the contract of plaintiffs to procure a franchise and assign the stock. Stewart v. Fulton, 31 Mo. 59. (b) There is no evidence in the record to show that Hennessy and Massie ever knew, until after they had expended all the money which they put into the plant, that there had been no election held to approve the terms of ordinance No. 307. There can be no waiver without full knowledge of the facts. 7 Am. and Eng. Ency. of Law (2 Ed.), 155; Johnson county v. Lowe, 72 Mo. 637; Haysler v. Owen, 61 Mo. 270; Stiepel v. Life Ass'n, 55 Mo. App. 224; Thresher Co. v. Pierce, 74 Mo. App. 676; Loan Ass'n v. Trust Co., 73 Mo. App. 161. (c) After Hennessy and Massie had taken possession of the property and had expended from nine to eleven thousand dollars thereon, before plaintiffs had attempted to carry out their contract, and then discovered that ordinance No. 307 did not constitute a franchise, they had a perfect right to retain possession of the property, and such retention of possession could not be construed as a waiver of performance by the plaintiffs. Lawrence v. Gifford, 17 Pick. 366; Jones v. Tayor, 7 Tex. 240; Hughes v. Jones, 3 Dec. F. & J. 306; Railroad v. Boestler, supra; Lamb v. James, 87 Tex. 485; Raynor Cattle Co. v. Bedford, 91 Tex. 642.

*McReynolds & Halliburton* and *Thomas & Hackney* for respondents.

(1)   It will be observed that by the terms of the contract of sale of the Gas plant by respondents they were simply required to procure a franchise and convey the franchise to the Incandescent Gas Light and Fuel Company authorizing the Incandescent Gas Light and Fuel Company to use the streets, avenues, alleys, parks and public grounds for laying gas mains and furnishing gas to consumers.   This they did by causing Geo. W. Lawrence to convey to said Incandescent Gas Light and Fuel Company the franchise granted by ordinance No. 93.   The franchise conveyed answers the description of the contract.   It was procured from the city of Carthage.   The respondents were not required in the contract to procure a new franchise having any peculiar features.   Any franchise whatever conveyed to the Incandescent Gas Light and Fuel Company authorizing it to maintain its mains, pipes and plant in the streets, and to manufacture and sell gas, fully answered the requirements of the contract.   The terms of the deed from the Southwest Light and Fuel Company to the Acme Gas Company, and from the Acme Gas Company to Geo. W. Lawrence, and from Geo. W. Lawrence to the Incandescent Gas Light and Fuel Company, are sufficient to convey the franchise, to the use of the streets, alleys and public grounds granted by ordinance No. 93.   These conveyances, each of them, by its terms, convey all the property of the grantor in the gas plant including all the mains, connections in the public streets and alleys within the city.   The conveyance of the gas plant and the mains and connections in the city necessarily conveys to the grantee the right to keep and maintain the mains in the city and for the use of the streets for the purpose of laying mains and maintaining the same therein as the grantor then had.   Whenever a thing is conveyed by name, all that the grantor has which is necessary to the enjoyment of the thing conveyed, passes with it.   3 Washburn on Real Property (3 Ed.), p. 335; Wardell v. Watson, 93 Mo. 107; Fitzpatrick v. Mik, 24 Mo. App. 435; 4 Kent's Com. (11 Ed.),

548; Lumber Co. v. Steam Barge, 76 Mich. 330.   The grant of a mill carries the use of water by which it is worked, floodgate, dam, and all things necessary for its use as well as the soil upon which it stands.   It would also include a franchise or right to maintain a dam.   3 Washburn on Real Property (3 Ed.), sec. 26, p. 336; New Ipswick W. L. Factory v. Batchelor, 3 N. H. 190; Smith v. Moodus Water Power Co., 35 Conn. 401; Jackson v. Trullinger, 9 Ore. 393; Pickering v. Stapler, 5 Serg. & R. 107.   When a thing is granted, everything necessary to its reasonable use is also granted without further words.   The Supreme Court of the State of Alabama held that where power is conferred to mortgage "effects and tracts" the donee of the power is authorized to mortgage franchises.   Pollard v. Maddox, 28 Ala. 321.   (2)   The defendants, having taken possession of the property agreed to be sold to them and having retained possession of the same until they mortgaged and sold the same, and their grantees still retaining possession and use of said property, are estopped to set up a want of title and they can not defend in a suit by plaintiffs for the purchase price.   If they desired to avoid the payment of the purchase price on discovering any defect in the title of the property, they should have rescinded and surrendered possession.   Mitchell v. McMillan, 50 Mo. 252; Harvey v. Morris, 63 Mo. 475; Wheeler v. Standley, 50 Mo. 509; Woods v. Straup, 63 Mo. 437.   And this rule applies as well to personal property as to real estate.   Morrison v. Edgar, 16 Mo. 411; Botts v. Spencer, 42 Mo. App. 184.

MARSHALL, J.—This is an action to recover seven thousand dollars, the purchase price agreed to be paid by defendants for the gas plant and franchise to operate the same in Carthage.

Briefly stated the facts are these: On the twenty-third of May, 1891, the common council of Carthage, by ordinance numbered 93, granted to the Southwestern Light and Fuel

Company a franchise to construct and operate a plant for furnishing gas to the people and the public, for a term of twenty years, the charge for gas not to exceed one dollar and twenty-five cents per thousand cubic feet. A plant was erected by the company, and the business carried on by it until some time in 1893, when the said company sold its property, plant and franchises to the Acme Gas Company for $20,000 and that company continued to carry on the business. The deed conveyed all the property and also the franchises of the grantor. On the twenty-fourth of June, 1894, the Acme Gas Company gave a deed of trust upon all its property, "with all the right, privileges and appurtenances thereunto belonging." Default was made in the payment of the note secured by the deed of trust, and the deed of trust was foreclosed by the trustee on the third of November, 1894, and George W. Lawrence became the purchaser for the sum of $2,500 and entered into possession of the property sold. On the twenty-eighth of January, 1895, Lawrence and others associated with him, entered into a written contract with the defendants by which Lawrence agreed to convey to the defendants the real and personal property which it was alleged had formerly been owned by the Acme Gas Company, and by which it was further agreed that Lawrence and his associates should "first procure a franchise from the city of Carthage, Missouri, to the use of the streets, avenues, alleys, parks and public places for the furnishing of gas to consumers in the name of one or more of the parties of the first part" (Lawrence and his associates) and by which it was further agreed that Lawrence and his associates should incorporate a new company under the laws of this State, under the name of the Incandescent Gas Light and Fuel Company of Carthage, with a capital stock of $25,-000 paid up, "which said franchise and stock subscribed for by the incorporators of the Incandescent Gas Light and Fuel Company, together with all the corporate rights, shall all be transferred, set over and assigned to" the defendants herein.

In consideration for which the defendants agreed to pay the plaintiffs the sum of seven thousand dollars in first-mortgage bonds. The defendants further agreed to issue $25,000 bonds of the new company, and to place five thousand dollars thereof in the hands of a trustee to be used only for improving and extending the plant, seven thousand dollars thereof were to be turned over to the plaintiffs, and thirteen thousand dollars thereof to be issued to the defendants, with the further agreement that if the defendants sold any of the thirteen thousand dollars worth of bonds they should use the proceeds in the redemption of the seven thousand dollars worth of bonds held by the plaintiffs upon a basis of eighty-five cents on the dollar, and with a further guarantee by the defendants that the seven thousand dollars bonds should net the plaintiffs eighty-five cents on the dollar and should be redeemed within five years. The plaintiffs were given the privilege of selling their bonds at any time they saw fit, but if they sold them for less than eighty-five cents on the dollar they should lose the difference. It was further agreed that the plaintiffs should obtain the franchise and incorporate the company as soon as practicable, and that the defendants should reconstruct the old plant by the first of May, 1895, unless prevented by stormy weather, strikes, etc. On the fourteenth of December, 1895, this contract was modified so as to allow an issue of $75,000 bonds instead of $25,000, and it was agreed that $50,000 of the bonds should be placed in the hands of the Missouri, Kansas & Texas Trust Company, as trustee, to secure the seven thousand dollars bonds to be issued to the plaintiffs. The plaintiffs promptly organized the Incandescent Gas Light and Fuel Company, and turned over the stock to the defendants. The plaintiffs also, on March 18, 1895, made a deed to the real and personal property and the right to manufacture gas under the United States patent. The deed conveyed the tangible property, "with all and singular the rights, privileges and appurtenances and immunities thereto belonging or in anywise

appertaining." The defendants elected themselves the officers of the company, took possession of the plant, reconstructed it at a cost of some twelve thousand dollars, and continued to operate it. They never issued to the plaintiffs the agreed seven thousand dollars of bonds of the company, nor did they execute any mortgage for $25,000 or $75,000 of bonds as agreed. On the contrary, on the twenty-fourth of March, 1896, this new company executed a deed of trust upon all its property "and all and singular the necessary appurtenances appertaining thereto" to secure a note for $1,500 due in sixty days, and thereafter on August 4, 1896, executed another deed of trust on all its property "with all the appurtenances" to secure a note for $1,000 due in sixty days, and thereafter, on December 6, 1897, it deeded "all its property and everything appertaining to its business" to the Carthage Light Company, for an expressed consideration of fifteen thousand dollars and other good and sufficient considerations. The Carthage Light Company executed a deed of trust on the property, "with all the appurtenances appertaining thereto" and "all rights, liberties, privileges and franchises now held or hereafter to be acquired by it," on January 3, 1898, to the St. Louis Trust Company to secure $35,000 in bonds.

The oral testimony of Wetzel, Lawrence and McReynolds also shows that the plaintiffs assigned the franchise conferred by ordinance numbered 93 to the Incandescent Gas Light and Fuel Company by a written assignment indorsed on a certified copy of that ordinance.

The defendants accepted the deed to the tangible property and the assignment of ordinance number 93, to the Incandescent Company, and for about a year operated the plant and exercised the privileges and franchises thereby conferred. Then they wanted to raise the price of gas from one dollar and twenty-five cents a thousand cubic feet to two dollars, and they employed Mr. McReynolds to draft an ordinance to that effect and asked the plaintiff to assist them in securing its passage

by the council, all of which was done, and resulted in the passage of ordinance number 307.   Then the defendants owning the Incandescent company attempted to issue bonds, when they were advised that they had no franchise from the city of Carthage, because the ordinance number 307 had not been passed "by consent of a majority of the qualified voters of the city, voting at an election for such purpose," as section 95 of the Act of 1893 (Laws 1893, p. 85-6) required.   So no bonds were issued, but thereafter the Incandescent company continued to use the streets of the city and to carry on the business, and executed the deeds of trust on March 24 and August 4, 1896, and conveyed the property and plant to the Carthage Light Company on the sixth of December, 1897, and that company executed a deed of trust on January 3, 1898, on all the property and appurtenances, and rights, liberties, privileges and franchises owned or thereafter to be acquired, to secure $35,000 of bonds, and has continued ever since to operate its plant and carry on its business.   No question or objection has ever been raised by the city authorities, or by the people, or by any state officer, or by any of the other companies, or by the plaintiffs, as to the right of the defendants or their assigns to exercise the franchise of using the streets.   The plaintiffs having thus turned over all their property and franchises to the defendants, and the defendants having used, enjoyed, mortgaged and sold them, and never having paid the plaintiffs a single cent, in bonds or otherwise, the plaintiffs demanded the contract price, and upon the refusal of the defendants to pay, the plaintiffs brought this action.   The petition sets out substantially the facts as here stated.   The answer admits, practically, all the facts, but pleads as a defense that the plaintiffs never carried out their contract to procure a franchise from the city and that ordinance 307 is void because it was not authorized by a vote of the people, and then sets up, by way of a counterclaim, a claim for $12,000 expended by defendants in improving the plant, and a claim for $20,000 damages, the

value it is alleged such a franchise would have been worth to them, but the defendants do not offer to return or pay for any of the property they received from the plaintiffs. The case was tried by defendants in the circuit court on the theory that ordinance 307 was void, and that the defendants never got any franchise from the plaintiffs, and that as the suit is upon the contract, which they claim the plaintiffs never carried out on their part, the plaintiffs are not entitled to recover anything in this form of action. The circuit court entered judgment for the plaintiffs for $5,950, being eighty-five per cent of seven thousand dollars, and added $710 interest, aggregating $6,660. The defendants appealed.

## I.

The crucial question in this case is whether or not the plaintiffs transferred or procured for the defendants a valid franchise from the city of Carthage to use the streets of that city for carrying on the business of furnishing gas to the public and the people.

The defendants' contention that ordinance 307 was void, because not authorized by a vote of the people as required by the Act of 1893, is well founded, for that act expressly prohibits the granting of a franchise of that character to any person, by any city of the third class, "unless by consent of a majority of the qualified voters of the city, voting at an election held for such purpose." Having established that proposition, the defendants went no further and now claim that they have made out a complete defense. But in this they are clearly in error, for the establishment of this contention does not dispose of the whole case. The plaintiffs have shown a transfer to the defendants of a valid franchise to use the streets of the city, outside of ordinance 307. The Southwestern Light and Fuel Company held a valid franchise for this purpose for twenty years from May 23, 1891, by virtue of ordinance num-

ber 93. By the terms of the deed from the Southwestern Light and Fuel Company to the Acme Gas Company, dated January 4, 1894, the former company conveyed not only its tangible property, but also expressly its franchise. The deed of trust made by the Acme Gas Company, on June 20, 1894, covered all its property, "with all the right, privilege and appurtenances thereunto belonging." The right to use the streets for its pipes and mains was a necessary appurtenant to its business, and, hence, that right and the franchise granted by ordinance 93, passed with the property under that deed of trust, to George W. Lawrence, by the foreclosure of the deed of trust. The deed from Lawrence to the Incandescent Light and Fuel Company covered not only the property particularly described, but also expressly provided that it was, "with all and singular the rights, privileges and appurtenances and immunities thereto belonging or in anywise appertaining." This also vested in the Incandescent company the franchise conferred by ordinance number 93. But this is not all. In addition to the transfer by such deed, the plaintiffs made a separate assignment of the privileges and franchise conferred by that ordinance, which was indorsed upon a certified copy of that ordinance and delivered to the Incandescent company. The defendants accepted these transfers, took possession of the property and exercised the rights, privileges and franchises conferred thereby, about a year, and had no other authority to use the streets of the city. Then in order to raise the price of gas from one dollar and twenty-five cents to two dollars a thousand, the defendants, with the plaintiffs' assistance, caused ordinance number 307 to be prepared and passed. The plaintiffs were under no obligation, contractual or otherwise, to assist the defendants to procure the passage of ordinance 307, for they had fully complied with their contract with the defendants by transferring to the defendants' new company a valid franchise to use the streets in ordinance number 93.

If the plaintiffs had never assigned ordinance 93, as

they did, their deed would have passed the franchise conferred by that ordinance to the defendants' company, as an appurtenant to the property especially enumerated in that deed. The pipes and mains were laid in the streets. They were necessary to carry on the business of supplying gas. The business could not have been carried on without having the pipes laid in the streets. The right to have the pipes in the streets was therefore essential to the enjoyment of the pipes and other property specially enumerated in the deed, and, hence, that right was an appurtenance to the property conveyed. [1 Bouvier's Law Dict., title Appurtenances, p. 158, and cases cited; Fitzpatrick v. Mik, 24 Mo. App. 435.] In Railroad v. Maffitt, 94 Mo. 1. c. 60, it was said: "The word 'appurtenant' has no inflexible meaning, but must be construed in connection with the nature and subject of the thing granted." And in Wilson v. Beckwith, 117 Mo. 1. c. 74, BLACK, J., said: "A thing is appurtenant to something else only when it stands in the relation of an incident to a principal, and is necessarily connected in the use and enjoyment of the latter," citing and following Humphreys v. McKissock, 140 U. S. 304. Wilson v. Beckwith came before this court again, and is reported in 140 Mo. 359. The question was what was embraced in the description in the deed "on the road and property," and GANTT, J., said: "Property is *nomen generalissimum,* and extends to every species of valuable right and interest, including real and personal property, easements, franchises and other incorporeal hereditaments." Accordingly, the previous decision in that case was overruled, and property not specifically mentioned in the deed was held to pass by the deed as being appurtenant to the property specially described and as being necessary to its full enjoyment.

But in addition to the deed the plaintiff specially assigned and transferred ordinance number 93 by a separate assignment, so that the defendants' company had and has enjoyed, and has transferred and is now enjoying all the privileges and

franchises conferred by ordinance number 93, and that ordinance conferred a valid franchise, for by the provisions of the law regulating cities of the third class, which governed when ordinance number 93 was passed, the council was expressly given power "to make contracts with or authorize any person, company or association to erect gas works or electric light works in said city, and give such persons, company or association the exclusive privilege of furnishing gas or electricity to light the streets, lanes and alleys in said city for any length of time, not exceeding twenty years." [Sec. 1519, R. S. 1889.]

The law as it then was, and remained until the passage of the Act of 1893, did not require the consent of the people of the city.

It follows, therefore, that the plaintiffs fully complied with their part of the contract and are entitled to recover the contract price of the property sold. The defendants received that property, including a valid franchise, used it, mortgaged and sold it, and have never paid the plaintiffs one cent for it. Instead of paying for it or offering to return it, the defendants ask a judgment against the plaintiffs for thirty-two thousand dollars.

The judgment of the circuit court is right, and it is affirmed. All concur.