STATE OF MISSOURI at the relation of the COUNTY OF ST. LOUIS, Relator v. CLARENCE EVANS, JESSE A. MITCHELL, JACK STAPLETON, Members of the State Tax Commission, and LLOYD C. STARK, FORREST SMITH, ROBERT W. WINN, DWIGHT H. BROWN and ROY McKITTRICK, Members of the State Board of Equalization, and W. N. Doss, Secretary of both Commissions.—139 S. W. (2d) 967.

Court en Banc, May 7, 1940.*

---

*NOTE: Opinion filed at September Term, 1939 April 18, 1940; Motion for rehearing filed; motion overruled at May Term, 1940, May 7, 1940.

*C. W. Detzen* for relator.

*Roy McKittrick,* Attorney General, and *Tyre W. Burton,* Assistant Attorney General, for respondents; *E. H. Wayman, Andrew J. Reis* and *Francis Finley* of counsel.

212

*Arthur V. Lashly, Maurice P. Phillips, Marvin E. Boisseau, Oliver J. Miller, Glen Mohler, Arthur U. Simmons, Lashly, Lashly, Miller & Clifford* and *Atwood & Atwood* for the School Districts and Municipalities of St. Louis County, *amici curiae.*

*Emmet T. Carter, amicus curiae.*

TIPTON, J.—This case comes to the writer on reassignment.

This is an original proceeding by certiorari in this court at the relation of the county of St. Louis to review the proceedings of respondents as members of the State Tax Commission and the State Board of Equalization in connection with the assessment of taxes of the Terminal Railroad Association of St. Louis, St. Louis Merchants' Bridge Terminal Railway Co., St. Louis Transfer Railway Co., whose tracks are only in the city of St. Louis, St. Louis Terminal Railway Co., which has tracks both in the city of St. Louis and the county of St. Louis, and the St. Louis Belt and Terminal Railway Co., whose tracks are located only in the county of St. Louis. Collectively, these railroads have main line tracks of 13.69 miles in the county of St. Louis and 12.79 miles of main line tracks in the city of St. Louis.

This suit is really a contest between the county of St. Louis and the city of St. Louis to determine the proper proportions of taxes each is to receive from these railroad companies. The railroad companies apparently have no interest in the outcome of this litigation as both relator and respondents say the taxes paid by these companies

will be approximately the same, regardless of how this litigation is determined.

In the recent case of State of Missouri, at the relation of St. Louis Union Trust Co. et al. v. Neaf as Assessor of St. Louis County, et al., 346 Mo. 86, 139 S. W. (2d) 958, we held in a certiorari of this kind that we are limited to an inspection of the records of respondents as shown by their return to our writ. From such inspection we are to determine the question of lack of jurisdiction or abuse of jurisdiction of the inferior tribunal, or of such tribunal's exercise of excess jurisdiction, or other error in the proceedings which appear from the record of such tribunal as a matter of law. It does not serve the purpose of an appeal or writ of error, and all that can be done under it is either to quash or to refuse to quash the record of which complaint is made.

From respondents' records we find that for the year 1938 each of the above-named railroad companies made separate tax returns to the proper taxing authorities of this State. When the duplicate statements of the property of the St. Louis Terminal Railway Co. and the St. Louis Belt and Terminal Railway Co., were examined by the county court of the county of St. Louis, pursuant to Section 10014, R. S. Mo., 1929, that court made an order disapproving these returns on the grounds that they should have been made by the Terminal Railroad Association. This order was filed with respondent, the State Tax Commission, which held a hearing on the matter of the assessment of the five corporations, denied the claim of St. Louis County, and ordered them assessed separately. St. Louis County appealed to the State Board of Equalization which affirmed the order of the Tax Commission.

The findings of fact of the Tax Commission show that for the years 1932, 1933, 1934, 1935, 1936, and 1937, the Terminal Railroad Association of St. Louis made the only tax returns for these five companies. This latter company owns all the stock in the other four railroad corporations, and these four companies have no rolling stock, but all the engines, cars and other equipment are the property of the Terminal Railroad Association, who maintains the property of the other companies through its employees. Nor do these other companies receive any revenue or have any bank account. Each of the five railroad corporations has its own set of officers and directors and has at all times made since their creation separate franchise and other corporate returns to the State of Missouri. In the year 1925, with the approval of the Interstate Commerce Commission, the Terminal Railroad Association entered into a formal written lease for 99 years with the St. Louis Merchants' Bridge Terminal Railway Co., and the St. Louis Transfer Railway Co., for the consideration of one dollar and the payment of the lessor's taxes and all corporate

assessments and expenses, to maintain the property in good condition.

In reference to the relation between the Terminal Railroad Association and the St. Louis Terminal Railway Co., and the St. Louis Belt and Terminal Railway Co., the respondents found as follows:

"That the Terminal Railroad Association of St. Louis has no written contract or written lease agreement with the St. Louis Terminal Railway Company, or with the St. Louis Belt and Terminal Railway Company, but had and exercises the use of their roadbeds, main lines and side tracks for railroad purposes, under an unwritten working agreement, and in consideration of such use maintains the lines in repair and pays their corporate expenses and taxes;

"That any and all taxes assessed against the mileage mentioned here are, and the payment of corporate expenses and maintenance for many years have been, paid exclusively by the Terminal Railroad Association of St. Louis, in consideration of the use of their lines, tracks and appurtenances;

"That during the entire year of 1938 the Terminal Railroad Association of St. Louis operated over and used all the main lines and side tracks listed in the schedule in paragraph 3 above, and in so operating the same used its own rolling stock, physical appurtenances, personnel and money . . ."

While it is true respondents have found there was no "written lease" between the Terminal Railroad Association and the two railroad companies, yet it did find that the former company did use the roadbeds, main lines and side tracks for railroad purposes and for such use agreed to maintain the lines in repair and to pay their corporate expenses and taxes.

We are of the opinion that this "unwritten agreement" was an oral lease between the two companies and the Terminal Railroad Association, as contemplated by our statute in reference to taxing railroads.

"A lease is generally regarded as a conveyance or grant of an estate in real property for a limited term with conditions attached, and in this connection has been defined as a conveyance to a person for life or years, or at will, in consideration of a return of rent or other recompense, and as a conveyance of any lands or tenements, usually in consideration of rent or other annual recompense, made for life, for years, or at will, but always for a less time than the lessor has in the premises." [35 C. J., sec. 381, page 1140.]

Respondents admit that this is a correct definition of a lease, because in their brief they define a lease as follows: "A contract by which one conveys lands, tenements or hereditaments for life, for a term of years or at will, or for any less interest than that of the lessor, usually for a specified rent or compensation."

Nor is it essential that a lease in this State be in writing; it may be oral. [Jenkins v. Womach, 164 Mo. App. 38, 147 S. W. 223; 35 C. J. 1148, sec. 401.]

Respondents say that it cannot be a lease because paragraph 4 of Section 5 of the Interstate Commerce Act provides that all railroad leases must be approved by the Interstate Commerce Commission. We are not concerned with whether it is the type of lease that must be approved by the Interstate Commerce Commission or whether the Interstate Commerce Act has been violated; we are concerned only with the interpretation of our taxing statute in reference to railroads, the controlling sections of which were enacted in the year 1883. They are as follows:

Section 10011—"All railroads now constructed, in course of construction, or which shall hereafter be constructed in this state, and all other property, real, personal or mixed, owned, hired or leased by any railroad company or corporation in this state, shall be subject to taxation for state, county or other municipal or local purposes, and taxes levied thereon shall be levied in the manner hereinafter set forth."

Section 10012—"On or before the first day of January in each and every year, the president or other chief officer of every railroad company . . . shall furnish to the state auditor a statement, duly subscribed and sworn to by said president or other chief officer, before some officer authorized to administer oaths, setting out in detail the total length of their road . . . including branch or leased roads, the entire length in this state, and the length of double or sidetracks, with depots, water tanks and turntables, the length of such road, double or sidetracks in each county, municipal township, incorporated city, town or village through or in which it is located in this state; the total number of engines and cars of every kind and description, including all palace or sleeping cars, passenger and freight cars, and all other movable property owned, used or leased by them on the first day of June in each year, and the actual cash value thereof."

As we read these sections, a railroad company is not only required to make a return on all railroad tracks that it owns, but also on all roadbeds that it leases.

Under Section 10022, the "board shall apportion the aggregate value of all property hereinbefore specified belonging to or *under the control of each railroad company*, to each county, municipal township, city or incorporated town in which such road is located, according to the ratio which the number of miles of such road completed in such county, municipal township, city or incorporated town shall bear to the whole length of such road in this state." (Italics ours.) In determining the length of the road for the purpose of apportion-

ment, only the length of its main track is to be considered. [State ex rel. Murphy et al. v. Stone et al., 119 Mo. 668, 25 S. W. 211.]

Since we have held that the Terminal Railroad Association holds leases on the property of the St. Louis Terminal Railway Co., and the St. Louis Belt and Terminal Railway Co., it necessarily follows that the roads of these two companies are "under the control" of the Terminal Railroad Association. Therefore, the taxes due from the five railroads should be proportioned between the city of St. Louis and the county of St. Louis in the ratio of the number of miles of main line track that each has to the total number of miles of main line track that the Terminal Railroad Association owns or controls through leases.

From an inspection of the record before us, we are of the opinion as a matter of law that respondents erred in finding that the five railroads in question should be assessed separately.

From what we have said, it follows that the record of respondents should be quashed. It is so ordered. All concur.