James B. HARGIS, Respondent,

v.

Mrs. E. A. SAMPLE, Appellant.

No. 46009.

Supreme Court of Missouri,
Division No. 1.

Nov. 12, 1957.

Robert I. Meagher, Fredericktown, Dearing, Richeson & Weier, Will B. Dearing, Hillsboro, for appellant.

Thomas A. Mathews, Robert & Roberts, J. Richard Roberts, Farmington, for respondent.

COIL, Commissioner.

James B. Hargis, plaintiff below, was lessee, and defendant, Mrs. E. A. Sample, owner-lessor of the 40-room St. Francois Hotel and Coffee Shop in Farmington, Missouri. Plaintiff brought this action to recover damages consisting of loss of profits allegedly accrued by reason of the alleged breach by lessor of a covenant in the written lease of December 1, 1945, to make outside repairs. Defendant's counterclaim sought damages by reason of money and labor expended to repair alleged damage to the hotel allegedly inflicted by lessee. The jury awarded plaintiff $8,500 on his claim and found for him on defendant's counterclaim. Defendant has appealed from the ensuing judgment but here complains only of the judgment entered on plaintiff's verdict on his claim and contends that the trial court erred in failing to direct a defendant's verdict, in giving instructions, and in the admission of evidence.

Defendant first contends that the language of the lease relieves her of liability for any damage to plaintiff's property caused by water and that inasmuch as the evidence shows that any damages plaintiff sustained resulted from water damage to plaintiff's property, defendant was not liable.

The lease, a printed form of commercial lease, provided, in so far as instantly pertinent, these things: Under the heading contained in the margin of the lease "Repairs and Alterations": "All repairs and alterations deemed necessary by Lessee shall be made by said Lessee at Lessee's cost and expense with the consent of Lessor; * *."

Under the marginal heading "Damage to Tenants' Property": "Lessor shall not be liable to said Lessee or any other person or corporation, including employees, for any damage to their person or property caused by water, rain, snow, frost, fire, storm and accidents, or by breakage, stoppage or leakage of water, gas, heating and sewer pipes or plumbing, upon, about or adjacent to said premises."

Typed in a blank space provided for the insertion of any additions to the printed matter the parties might have wished was: "The lessor is to take care of all outside repairs including screens."

As we understand, defendant says the foregoing lease provision should be construed to mean that lessee was to make all repairs he deemed necessary except outside repairs which were to be made by lessor, but that in no event was there to be any liability on lessor for damage to the tenant's property caused by water, and that such a construction of the terms of instant lease is compelled by our holding in Gralnick v. Magid, 292 Mo. 391, 238 S.W. 132, 133, 28 A.L.R. 1530. We agree that Gralnick does require that construction but,

even so, for the reasons hereinafter, we cannot agree that instant defendant was relieved of liability.

The material parts of the lease in Gralnick were to all intents and purposes the same as the material parts of the instant lease. The lease there provided: *"Said lessor shall not be liable to said lessee or agents, guests, or employees for any damage caused to his or their person or property by water, rain, snow, ice, sleet, fire, storms, and accidents,* or by breakage, stoppage, or leakage of water, gas, heating, and sewer pipes, or plumbing upon, about, or adjacent to said premises. * * *

"Lessor agrees to do repairing."

The facts in Gralnick were that a fire damaged the roof of the leased building. During the course of lessor's negotiations with an insurance company and during the process of installing a new roof, plaintiff's stock of shoes was damaged by rain. This court, in holding that there was no liability on lessor, said that even if the words in that lease ("Lessor agrees to do repairing") were construed to mean "that she was to replace the roof or other parts of the building when destroyed by fire, yet we are unable to see in what possible manner that would benefit the lessee in this case, or render the lessor liable, when both parties clearly agree, by the language found in paragraph 1, that the lessor should not be liable to the lessee because of any damages done to him or his property on account of rain, water, etc." 238 S.W. 135 [4]. In other words, "although the lessor has covenanted to make repairs, he will not be liable for damages arising from a cause concerning which he is, by the terms of the lease, exempt from liability." 52 C.J.S. Landlord and Tenant § 423c(3), p. 83 (wherein the author so construed the holding of this court in Gralnick v. Magid, supra). And lease covenants relieving lessor from liability for damages resulting from stated conditions are valid. Govero v. Standard Oil Co., 8 Cir., 192 F.2d 962; Kansas City Stock Yards Co. v. A. Reich & Sons, Mo., 250 S.W.2d 692.

And so, in the instant case, if plaintiff's loss of profits accrued because of water damage to the "tenant's or lessee's *property,"* as the term "property" was used in the instant lease, then, under our ruling in Gralnick v. Magid, supra, defendant-lessor was not liable to plaintiff-lessee for the only damages proved in the instant case.

It is defendant's view, that the word "property" as used in the lease is all-inclusive and encompasses "every species of valuable right and interest, including real and personal property, easements, franchises, and other incorporeal hereditaments," Lawrence v. Hennessy, 165 Mo. 659, 670, 65 S.W. 717, 719, and that a leasehold interest is personal property, Thacker v. Flottmann, Mo., 244 S.W.2d 1020, 1023. Thus, says defendant, lessee's property was damaged by water in that his leasehold was damaged by reason of his inability to rent certain rooms which resulted from water damage to those rooms. In one sense, a benefit which lessee obtained by reason of the lease and which technically was *property* was the right to use the rooms in the hotel. And thus, when the right to use the rooms in question was destroyed by reason of water entering those hotel rooms through a leaky roof, and perhaps through leaky windows or walls, lessee's *property* was damaged. And it is further true that a lease is for certain purposes "regarded as equivalent to a sale of the premises for the term * * *." Warner v. Fry, 360 Mo. 496, 499, 228 S.W.2d 729, 730 [1]; and see, State ex rel. St. Louis County v. Evans, 346 Mo. 209, 216, 139 S.W.2d 967, 969 [5]. And "such estate has been said to be property or a valuable property interest." 51 C.J.S. Landlord and Tenant § 26, p. 531. Thus, again, in one sense, damage to the room, as opposed to damage to its contents, was damage to lessee's *property.*

We have the view, however, that the parties to this lease, when they referred to "lessee's property" under the marginal heading "Tenants' Property," intended to and did use the word "property" to describe that *personal property* which the tenant or

lessee would be entitled to remove from the premises upon the termination of the lease. To illustrate our view, if plaintiff in this case sought to recover by reason of water damage to his furniture located in particular hotel rooms, he would be precluded by the terms of this lease because lessor had been relieved of liability for water damage to lessee's *property*. In the instant case, however, all of the evidence as to the damage to the rooms which resulted in alleged loss of profits was water damage to the walls, the paper, and the plaster, which, in most instances, made the rooms in question untenantable because they thereby became too moldy and smelly and damp to be rentable. The water damage was to the rooms which were owned by lessor, even though leased to plaintiff. Lessee's personal property contained in the rooms was not damaged.

■ Words used in a written lease are to be interpreted according to their ordinary meaning unless they are defined in the instrument itself. Missouri Athletic Association v. Delk Investment Corp., 323 Mo. 765, 771, 20 S.W.2d 51, 54 [2, 3]. We have the view that lessor and lessee in the instant case, when they spoke of water damage to lessee's property, referred to tangible chattels which are ordinarily thought of as one's property located in a rented building. That such was likely, it seems to us, is indicated by the fact that the entire clause quoted above which relieved lessor from water damage to lessee's *property* included damage to the *property of employees or guests*. *Property* of employees and guests would, of course, be the items of tangible personal property that those persons, i. e., lessee's employees and guests, might have within the rented structure. And if so, then the word *property* indicating "*lessee's property*" could have no different connotation.

We are of the view, therefore, that the lease did not relieve defendant of liability for the damage which the evidence in this case tended to show.

■ Defendant, as a second reason for urging that the trial court erred in failing to direct a defendant's verdict, asserts that the plaintiff adduced no sufficiently definite evidence of monetary loss sustained, but, on the contrary, the evidence was such that any finding as to an amount of loss was entirely speculative and conjectural. A search of the record discloses that the sole evidence which pertained to the *extent* of any damage suffered pertained to alleged loss of profits which allegedly resulted from the untenantability of certain hotel rooms which was caused by defendant's failure to accomplish outside repairs, to wit: repairs to the roof, to downspouts, and perhaps to window sills and side walls. Plaintiff testified that while he could not give an exact number of rooms which were untenantable due to dampness, odor, and moldiness for each year of the lease, he could nevertheless approximate that number. Plaintiff said an estimated number of rooms at stated prices were not rentable for various estimated percentages of the total lease period, and testified that during the first five years of the lease he turned away sufficient people every night to have filled the rooms had they been tenantable and that in the last five years of the lease he turned away, on Monday, Tuesday, Wednesday, and Thursday nights, an average of seven or eight people to whom he could have rented rooms had it not been for the untenantable condition of the rooms. He further testified that if the untenantable rooms had been available for renting, his only cost over and above the cost of operating the hotel with the rooms unavailable, would have been the cost of supplying linens, electricity, soap, and water, which would have been 30¢ per room per night.

We think the foregoing testimony was sufficiently definite to support the award of damages in this case unless other testimony by plaintiff to which we shall refer destroyed its sufficiency. Plaintiff said that his hotel clerk kept the books and therefrom

had made a memorandum of the number of rooms which from time to time were not rentable. It appeared that plaintiff had some sort of memorandum at the time he testified, but the memorandum plaintiff had was not the one prepared by the clerk and, so far as the record shows, the clerk's memorandum was never identified or used and its absence was not accounted for. But it is not clear whether plaintiff meant that he was basing his estimates of the percentages of time the rooms were available on his examination of the memorandum his clerk had made from the records and thence transposed to the memorandum he had, or whether he was relying wholly on his recollection even though records were available. Furthermore, plaintiff's testimony as to the number of people turned away is not entirely clear as to whether plaintiff's estimate was based entirely on recollection or whether, again, the clerk had kept some record thereof to which he had recently referred. Plaintiff did say that he had kept records of the operation over the entire 10-year period and yet did not purport to produce or testify from any of those records. It also appeared that plaintiff kept registration sheets for hotel guests and later a registration card system was used. Plaintiff said that there was a requirement that the cards be retained for the last three years and that when he left at the end of his lease, the registration cards for the last three years were left in a storage room at the hotel. The cards were not produced or used at the trial and it was not shown that any effort had been made to obtain them. While those registration cards would not show the unavailability of rooms, the cards would, it seems, indicate, during the period of the last three years of lessee's operation, the percentage of occupancy of the tenantable rooms.

There were other statements made by the plaintiff in his testimony to which defendant directs our attention, but, as we construe them, they went to the weight to be given plaintiff's testimony rather than to the sufficiency of the evidence as a whole to have supported a prima facie case of loss of profits.

■ There is no disagreement between the parties that prospective profits which are proved with reasonable accuracy and certainty may be recovered in an action based on the failure of a landlord to repair. It is essential, however, that plaintiff show not only that he suffered damages but he must also show the *amount* of the damages with sufficient certainty "to warrant the jury in estimating their extent." Tnemec Co. v. North Kansas City Development Co., Mo., 290 S.W.2d 169, 174 [4–6]. See annotations in 28 A.L.R. 1448, 1510e; 28 A.L.R.2d 486, 487, § 29. True, in some cases all that can be required is to produce all the relevant facts tending to show the extent of damage and one is not to be excused for a breach of contract resulting in damages simply because those damages may not be established with exact certainty. Wright v. Ickenroth, Mo.App., 215 S.W.2d 43, 45 [6, 7]. It has been said, however, that the amount of estimated loss of earnings (and the same would apply to loss of prospective profits) should, in the event of uncertainty, at least be supported by the best evidence available. Moss v. Mindlin's, Inc., Mo., 301 S.W.2d 761, 773 [12].

Construing all the evidence as to the extent of damages most favorably from plaintiff's standpoint, we are constrained to hold that plaintiff did adduce substantial evidence sufficiently certain as to the extent of damages sustained to support the amount of the verdict. As will appear hereinafter, this case must be reversed and remanded because of erroneous instructions. Consequently, we observe for whatever it may be worth that the record as to the extent of plaintiff's damage is not as satisfactory as it apparently could have been and, in order to obviate future questions as to the sufficiency of the evidence as to the extent of damage sustained, particularly future questions as to exces-

siveness of verdict, plaintiff would be well advised to adduce or account for any and all records which would aid in tending to more accurately establish the amount of dollar damage sustained.

■ Defendant's contention that the trial court erred in giving instructions 1 and 2 must be sustained. It is necessary for an understanding of our ruling in that respect to review some of the evidence. Plaintiff testified that on November 25, 1945, when he and his agent, in the presence of defendant, were looking at the hotel property to determine whether to lease it, he placed a sheet of paper (instant Exhibit A) on a clipboard, dated the paper 11/25/45, that day's date, and then, as he went through the building he indicated on the paper the items of repair which the owner would have to accomplish as a condition precedent to his leasing the hotel. He wrote on the exhibit, "Mrs. Sample agrees to the Following," and thereafter listed these eight things: fix floors in dining room, fix screens, plaster rooms 200 and 214, rest room, and bath, fix plumbing all in good order, fix boiler, paint building, screen back porch, and fix sewers to kitchen and dining room. Plaintiff also testified that when he met with defendant on December 1, 1945, for the purpose of executing the lease, he refused to sign because the items listed above had not been incorporated in the lease. A discussion ensued and, as a result, Exhibit A was made a part of the lease by physical attachment thereto and it was understood that it formed a part of the lease when the parties signed.

Plaintiff testified that defendant did not make any of the repairs itemized on Exhibit A except that defendant plastered the mentioned rest room and bath about a year before the hotel closed, and painted the building in 1951 or 1952. As to the other listed items, plaintiff made some repair to the dining room floor, fixed the sewer to the kitchen and dining room, and made some repair of the furnace, which may have been a part of the listed item, "fix boiler." There was no testimony, however, as to whether any damage accrued to plaintiff by reason of the failure of defendant to have accomplished the listed repairs and there was no testimony as to the amount of damage sustained by plaintiff by reason of his having accomplished certain of the listed repairs. A jury, perhaps, reasonably could have found that some damage did accrue to plaintiff by reason of defendant's failure to have repaired and by reason of plaintiff's having done some of the repairs himself, but there was no evidence whatever which would warrant a jury in estimating the extent of any such damages.

Further, there was evidence that plaintiff operated the hotel coffee shop for a period of time and thereafter subleased it to and sold the coffee shop equipment to a Mr. Sauer. There was also evidence that defendant did not fix the kitchen floor or the coffee shop floor. Even if it be assumed that the repair listed on Exhibit A as "Fix Floor in Dining Room" included or referred to the coffee shop floor, nevertheless there was no evidence whatever that any damage accrued to *plaintiff* by reason of defendant's failure to have fixed that floor.

Under that evidence, the court gave instructions 1 and 2 (our italics):

1. "The Court instructs the jury, if you find and believe from the evidence, that on the first day of December, 1945, the defendant, Mrs. E. A. Sample, by an instrument in writing leased to the plaintiff, James B. Hargis, the St. Francois Hotel and Coffee Shop, located in the City of Farmington and the State of Missouri, for a period of ten years; and that said lease contained provisions whereby the defendant, Mrs. E. A. Sample, would take care of all outside repairs, including screens, *fix the floor in the dining room, plaster room 200–214, rest room and bath, fix plumbing all in good order, fix boiler, paint building, screen back porch, fix sewer to kitchen and dining room; and if you further find and believe from the evidence*

*that the defendant, Mrs. E. A. Sample, failed and refused to make all or a part of said repairs, and if you further find and believe from the evidence that as a result of said failure, if you find defendant did so fail,* and during the term of the *lease a number of the rooms in the St. Francois Hotel and the Coffee Shop became and were rendered unfit as hotel rooms and as a coffee shop by reason of said failure,* if you find the defendant Mrs. E. A. Sample did so fail, and if you further find and believe from the evidence *that said rooms and said coffee shop continued untenable for the reason of the failure of the defendant, Mrs. E. A. Sample, to repair in accordance with the terms of said contract,* if you so find and believe, and *that as a result of the failure of the defendant to repair said St. Francois Hotel and Coffee Shop* in accordance with the terms of said contract, the *plaintiff was damaged,* if you so find and believe, then *you will find the issue in favor of the plaintiff,* James B. Hargis, *on plaintiff's petition and against the defendant,* Mrs. E. A. Sample."

2. "The court instructs the jury that, *if you find the issues in favor of the plaintiff and against the defendant on plaintiff's petition, you will assess plaintiff's damages* in such sum as you may find and believe from the evidence will *reasonably compensate plaintiff for his loss of profits in the operation of the St. Francois Hotel,* if any, as mentioned in the evidence, which in no event shall exceed the sum of Twenty Thousand Dollars ($20,000.00), the amount sued for."

It is clear that by instructions 1 and 2 read together the court authorized the jury to find that damages had accrued to plaintiff, and authorized the jury to award monetary damages to plaintiff, because of defendant's failure to have accomplished the repairs listed on Exhibit A and for failure to have repaired the coffee shop. That such was erroneous is apparent because, as we have heretofore pointed out, there was no evidence adduced which would warrant the jury in fixing the extent of any damage that might have accrued by reason of the failure of defendant to accomplish repairs listed on Exhibit A and there was no evidence that any damage accrued to plaintiff by reason of defendant's failure to repair the coffee shop. True, the instructions encompass (and in instruction 1 conjunctively) the finding of and the award of damages for loss of profits accruing by reason of defendant's breach of her covenant to make outside repairs, and we have held that issue was supported by sufficiently definite evidence. But it is impossible to tell from the instructions considered together whether the amount of the jury's verdict includes only loss of profits from failure to make outside repairs or whether it also includes damages for failure to make the repairs on Exhibit A or failure to repair the coffee shop. And, as we have held, there was no sufficient evidence to support an award of damages as to those last-mentioned items. At the very least a jury likely would believe that the court intended to authorize a finding of and an award for loss of profits accruing by reason of failure to make the repairs on Exhibit A and failure to repair the coffee shop, a finding and an award which were not substantiated by the evidence.

■ We need not determine the validity of the other attacks made on instructions 1 and 2 as plaintiff undoubtedly will have in mind defendant's further contentions in the event of a retrial. It is desirable, however, to deal with the two instances in which defendant claims the trial court erred in the admission of evidence because of the likelihood of a recurrence of the same questions. As noted, Exhibit A was the piece of paper on which were listed the repair items which plaintiff claimed defendant had agreed to accomplish prior to or shortly after the beginning date of the lease. We have heretofore rather fully set forth plaintiff's testimony with regard to that exhibit and it is here only necessary to point out that Exhibit A, dated November 25, 1945, was attached to the lease at the time it was signed on December 1, 1945, and that plaintiff and defendant understood that Exhibit A was a part of the lease.

True, there was testimony that Exhibit **A** was not attached when the lease was recorded and it is true that there was blank space provided in the lease where the items (from Exhibit A) could have been inserted, and defendant testified that she had never heard of or seen Exhibit A and that it was never a part of the lease. Those matters went to the weight of plaintiff's testimony with respect to the lease and not to the admissibility of the exhibit.

■ Defendant contends that the action of the court in admitting Exhibit A was tantamount to permitting plaintiff to vary the terms of a written contract by parol evidence. The fallacy of that argument is that plaintiff's testimony was that Exhibit A was a part of the original written contract. If so, no questions of difference in dates on the exhibit and the lease or whether the exhibit was integrated into the lease, are relevant. The jury reasonably could have found Exhibit A was part of the only written contract between the parties, and thus the exhibit was properly admitted.

Defendant also contends that the trial court erred in admitting in evidence a letter offered during plaintiff's rebuttal (Exhibits X1 and X2) which plaintiff's attorney had written to defendant on March 9, 1946, about three months subsequent to the date of the lease. The letter contains eleven numbered paragraphs and plaintiff offered, and the court admitted, all of the paragraphs except 8 and 9. The letter is two pages long but suffice to here say that it consists of a series of statements setting forth plaintiff's attorney's view that defendant had not made repairs on the building as agreed and setting forth plaintiff's attorney's views about various other matters that had arisen in connection with the hotel. The letter is extremely argumentative in nature and of course was hearsay in so far as it was offered as proof of the truth of the statements therein made.

■ But plaintiff here contends that the letter was admissible on two grounds: first, because it impeached the testimony of defendant who denied receiving the letter; and second, because it was notice to defendant of the fact that plaintiff claimed certain repairs had not been made as agreed. Neither contention is tenable. First, the witness' testimony that he deposited the letter in the mail, postage prepaid, accomplished the impeachment of the testimony of defendant that she had not received the letter. The disclosure of the contents of the letter did not tend to contradict defendant's denial of its receipt.

■ Secondly, the only repairs which, according to the pleadings and evidence, plaintiff claimed defendant had agreed to make and for failure to have so made plaintiff sought damages, were outside repairs and the eight items set forth on Exhibit A. In so far as the items set forth on Exhibit A were concerned, no notice with respect to those was necessary and the evidence of notice as to those was immaterial. That is to say, if according to plaintiff's testimony, there was an agreement that defendant would make the specific repairs listed on Exhibit A, and plaintiff's evidence showed that defendant in violation of that agreement failed to make those repairs, whether defendant had notice that plaintiff claimed that defendant had so failed was wholly immaterial to any issue in the case.

■ All of the eleven paragraphs of the letter (except paragraph 7) dealt either with items contained on Exhibit A or with items as to which there was no pleaded or proved agreement and which apparently were subjects of disputes between the parties entirely collateral to the provisions of the lease with or without Exhibit A as a part thereof. As noted, the lease provided that defendant would make outside repairs. As to those, it was necessary that she be advised of the need for the repair or that such need appear to defendant in some other manner. Consequently, it would have been material to have shown in evidence that plaintiff *claimed* the necessity for a certain outside repair, irrespective of the validity of the claim, and such proof would have properly come in plaintiff's case in chief rather than in rebuttal. In any event, however, the only paragraph of the letter

(paragraph 7) which dealt with an outside repair (in addition to the specific repairs mentioned on Exhibit A) contained the complaint that when it rained, water ran into the basement due to defective and broken gutters and downspouts on the building. While the gutters and downspouts came under "outside repairs," the fact was that there had been no evidence in the case of any damage accruing to plaintiff by reason of water running into the basement. Consequently it is apparent that even paragraph 7 was not admissible in rebuttal. It follows that the trial court erred in admitting the letter, plaintiff's Exhibits X1 and X2, in evidence.

For the noted error in giving instructions 1 and 2, the judgment is reversed and the case is remanded for a new trial.

VAN OSDOL and HOLMAN, CC., concur.

PER CURIAM.

The foregoing opinion by COIL, C., is adopted as the opinion of the court.

All concur.