**TRUCK INSURANCE EXCHANGE,**
**Plaintiff-Respondent,**

v.

**BILL RODEKOPF MOTORS, INC.,**
**Defendant-Appellant.**

**No. WD 32209.**

Missouri Court of Appeals,
Western District.

Oct. 20, 1981.

James D. Williamson, Jr., Independence, for defendant-appellant.

Richard H. Heilbron, Heilbron & Powell, Kansas City, for plaintiff-respondent.

Before MANFORD, P. J., and DIXON and NUGENT, JJ.

NUGENT, Judge.

This is an appeal on behalf of the defendant, Bill Rodekopf Motors, Inc., from the judgment of the trial court which found the automobile dealership liable to the plaintiff, Truck Insurance Exchange, in the amount of $8,753.50 plus costs for unpaid insurance premiums. We reverse.

Truck Insurance Exchange filed suit against Rodekopf on December 3, 1979, alleging that Rodekopf owed $11,196.60 in unpaid insurance premiums for insurance policies covering various aspects of the operation of the dealership from November, 1975 to October, 1978. Rodekopf's answer admitted the purchase of the insurance policies but affirmatively stated that all money due Truck Insurance had been paid. Trial was held on August 20, 1980. The record shows that the trial judge on August 26, 1980, by letter to the attorneys for each of the parties, requested additional testimony to correct inconsistencies in the transcript "with respect to the amount of the alleged damage". In its judgment entry of September 10, 1980, the trial court, noting that the parties did not agree to "further evidence in view of the inconsistencies in the record", found in favor of Truck Insurance Exchange.

Under the familiar instruction of *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. en banc 1976), we must reverse the judgment of the trial court if "there is no substantial evidence to support it".

According to the transcript and the legal file, Truck Insurance Exchange (Truck) is a

member company of the Farmers Insurance Group (Farmers). Prematic Service Corporation (Prematic) is a separate corporation operated by member companies and owned by Farmers. When policyholders cannot pay a six-month's or one-year's premium in a lump-sum, Prematic bills the insured for all of the member insurance companies. In this case, Prematic followed its usual procedure and made Rodekopf's six-month premium payment to Truck in return for Rodekopf's monthly payment with an added service charge to Prematic. The sole witness for Truck, Barbara Kirkman, accounts receivable supervisor for Farmers, testified that Rodekopf had two policies with Truck, a package policy, providing various coverages including building, crime and uninsured motorists, and a policy for glass coverage. In addition to these fixed premium coverages, Rodekopf's coverage for workers' compensation required an audit to be made of Rodekopf's payroll record at the end of a specified payroll period in order to calculate that premium. Similarly, an audit-based premium was calculated for automobiles in stock during a given period.

Although Ms. Kirkman testified that Rodekopf's fixed monthly premium payment was $1,754.42, her itemized accounting of individual risk coverage amounted to $1,925.36 per month.[1] On direct examination she testified that Rodekopf was current with the Prematic payments through June, 1978, but owed the monthly payments of $1,754.42 for the four following months through October, 1978, leaving a balance due of approximately $7,000. The additional money claimed due, according to Ms. Kirkman, was billed to Rodekopf by Truck and accrued when the audit for the workers' compensation premium on the actual payroll and monthly valuation of the cars in stock exceeded the premium estimates at the inception of the policy. Therefore, Truck's prayer was for $11,196.60, a sum which Ms. Kirkman later claimed allowed a credit to Rodekopf rather than an additional charge, on his workers' compensation coverage and an experience modification credit for having few claims.

On cross-examination, however, Ms. Kirkman admitted that a $897 payment to Prematic was made in July, 1978, that a $260.90 payment was made in September, 1978, and that Prematic refunded $2,340.60 to Rodekopf in September, 1978. On redirect examination, Ms. Kirkman stated that the $11,196.60 claimed due included those payments and refund.

On recross-examination Ms. Kirkman testified that Prematic sent Rodekopf statements in July, 1978 for $5,268.65 and in October, 1978 for $5,187.50; and Truck sent statements in May, 1978 for $3,297.80, in June, 1978 for $2,805.60, and in August, 1978 for $712.20. Then Ms. Kirkman testified to a billing in the amount of $1,124.50 in August, 1978. These bills were not cumulative. Following the itemized account of monthly billings, Ms. Kirkman testified that in January, 1979 Rodekopf was billed a cumulative total of $12,418.20. The record does not indicate whether this was total billing from Prematic, Truck, or both. Nor is there an explanation for the inconsistency between the actual total of the monthly statements and the total billed in January, 1979.

The parties then stipulated that Rodekopf had made payments to Prematic in the amount of $18,263.15 from January, 1978 through September, 1978. Rodekopf terminated coverage October 10, 1978. Bill Rodekopf, president of Bill Rodekopf Motors, Inc., testified that when he terminated coverage with Truck in October, 1978 he had paid all monies he had been asked to pay.

At the close of his evidence, Rodekopf made a "two-pronged" motion: (1) judgment for defendant based on a lack of evidence to support the allegations of the plaintiff's petition, and (2) judgment for the defendant based on the fact that Prematic, not the plaintiff, was the real party in interest in this case. The plaintiff, by his attorney, answered that once the policy had expired Truck obtained an audit to deter-

---

1. Her testimony with respect to items was that they totaled $1753.42 ("$1 off") in fact amounts to $1,925.36 as appellant notes on appeal. This discrepancy remains unexplained.

mine premiums due, and those monies were payable directly to Truck. Shortly after the trial, the trial judge addressed each of the parties by letter requesting assistance in calculating damages, if any.[2]

On appeal Rodekopf raises these same objections to the final judgment of the trial court. In *State ex rel. Mather v. Carnes*, 551 S.W.2d 272, 291 (Mo.App.1977), this court held at 291:

> The more recent cases on the subject treat the failure to sue in the name of the state as a defect of party on the face of the petition, subject to the general rule that such a defect is waived by an answer to the merits. . . . The failure to raise a claim of defect of parties by proper pleading, formerly by demurrer or answer, and now by motion or answer, waives that objection. It is noted that the defendants Sheriff and Maryland Casualty first raised the nonjoinder issue of the state as a party-plaintiff by oral motion to dismiss at the close of the Mather evidence. The objection came too late; . . .

Although in the instant case there is evidence that Truck did not assign to Prematic all of its rights to Rodekopf's payments and thus remains a real party in interest pursuant to Rule 51.01, Rodekopf waived his objection of defect of parties by his failure to raise that claim by motion or answer.

We find merit, however, in Rodekopf's contention that the $8,753.50 judgment of the trial court is not supported by any substantial evidence. This court in 1886 in *McConey v. Wallace*, 22 Mo.App. 377, a contract action wherein the defendants introduced evidence of their damages resulting from defective material and work, held at 382:

> There is no question but the rule of law requires that the evidence, in each case, must be of tangible facts, upon which the triers can hang a reasonable belief, and

from which they may make rational deductions and calculations. And if the party upon whom rests the burden of this proof leaves the jury to grope wholly in the dark, or to mere conjecture, he ought not to recover any substantial damages.

*Cf. Coale v. Rickard*, 540 S.W.2d 151, 152–53 (Mo.App.1976), in which the appellate court found that the trial court's judgment against the defendants' counterclaim of damages where the only evidence to establish cost of repair or replacement was testimony that repair of the defects would "run between three and $4,000" was not against the weight of the evidence.

Missouri courts do not demand that in a contract action damages be proved by exact certainty in order to prevent one breaching a contract to escape liability. "All that can be expected in any case is that the relevant facts tending to show the extent of the damages be placed before the jury to enable it to make such an intelligent estimate of the same as the circumstances of the case will admit." *Wright v. Ickenroth*, 215 S.W.2d 43, 45 (Mo.App.1948). *Accord, Hargis v. Sample*, 306 S.W.2d 564, 569 (Mo.1957); *Haggard v. Mid-States Metal Lines, Inc.*, 591 S.W.2d 71, 77 (Mo.App. 1979).

In the instant case, after a painstaking examination of the record on appeal, we are unable to make an estimate of the damages—if any—suffered by Truck. The trial judge appeared to be equally mystified following the trial. Despite the trial judge's call for clarification or additional proof, the parties declined to produce additional evidence leaving the judge to guess the amount owed. It would seem that had Truck had evidence to clarify the damage issue, it would have presented it upon the request of the trial judge. Neither party has ever complained that the trial court did not *order* the trial reopened for additional evidence on any issue. We find nothing in

---

2. The trial judge's request was:

"I have personally reviewed the transcript of the hearing and find inconsistencies with respect to the amount of the alleged damage. In order that there be no injustice regarding either party, and primarily because I feel somewhat to blame in pressing the attorneys for time, I would ask you both to contact my clerk in order that there be additional testimony in this matter."

the judgment entry to explain the method the trial judge used to calculate any additional premiums due Truck and nothing in the record to support this award or any other.

Therefore, the judgment is reversed.

All concur.