William GASSER, R. Ph., Appellant,

v.

JOHN KNOX VILLAGE, et al., Respondents.

No. WD 40215.

Missouri Court of Appeals, Western District.

Dec. 6, 1988.

Bert S. Braud, Kansas City, for appellant.

James M. Beck, Sheldon D. Korlin, Kansas City, for respondents.

Before FENNER, P.J., and MANFORD and GAITAN, JJ.

FENNER, Judge.

Appellant, William Gasser, filed a Third Amended Petition against respondent, John Knox Village, in June of 1984, seeking damages for breach of contract. The case was tried by a jury which returned a verdict on September 26, 1987, in favor of Gasser in the amount of $107,000. John Knox Village filed a motion for judgment notwithstanding the verdict or in the alternative for a new trial. The trial court granted the motion for judgment notwithstanding the verdict, from which grant Gasser now appeals. The motion for new trial was overruled.

In reviewing the trial court's decision to grant the motion for judgment notwithstanding the verdict, after a verdict was rendered for plaintiff, Gasser, the evidence, along with all reasonable inferences deducible therefrom, must be viewed in the light most favorable to Gasser. *Luyties Pharmacal Co. v. Frederic Co., Inc.*, 716 S.W. 2d 831, 833 (Mo.App.1986). Therefore, the facts are stated in accord with this standard of review.

Gasser is a registered pharmacist in Lee's Summit, Missouri. John Knox Village (hereinafter JKV) is a not-for-profit corporation which provides life-care residence and skilled nursing for the elderly. Gasser began negotiating a lease in the fall of 1978 for space at JKV to operate a pharmacy. Gasser was mainly interested in providing pharmaceuticals to patients in the skilled nursing facility known as the Village Care Center (hereinafter VCC) and in getting a guarantee that his pharmacy would be the exclusive provider of prescription business generated by the VCC. At the time of the negotiations a Mr. Graham Hutchins, the nursing home administrator, was primary contact for JKV.

Following the negotiations, Gasser leased approximately 600 square feet from JKV, commencing October 1, 1978 to operate a retail drug store. Pursuant to renewals of such lease, Mr. Gasser occupied the leased premises continuously from October 1, 1978, through September 30, 1987.

At the time the lease was entered Gasser began operating the pharmacy and began receiving orders from the VCC. The pharmacy was run under a traditional bottle system for the delivery of drugs. On March 26, 1982, JKV requested Gasser and several other pharmaceutical suppliers to make proposals for the development and delivery of a unit dose delivery system. A unit dose delivery system is a system whereby the drugs are placed in a plastic card with bubbles to hold each pill. Drugs are placed in each bubble then the bubble is sealed using heat. The bubble packet is then snapped into a plastic container and a label for the prescription is placed on the container. The proposal requested by JKV was for a seven day modified unit dose system whereby prescriptions would be filled for a maximum of seven days. Following each seven day period a new prescription would be filled. The unit dose system is preferable to the bottle system because of its increased accuracy in ensuring that the correct number of doses are administered.

Gasser did not submit a proposal for a unit dose delivery system, upon advice of his attorney. By letter, Gasser's attorney advised JKV that Gasser would not submit a proposal because the attempt to implement such proposal was in violation of Gasser's exclusive rights under his lease. On October 6, 1982, Parkville Apothecary, Ltd., was awarded a contract to provide a

unit dose delivery system to the VCC along with a supporting computer system selected by the VCC administration. Use of the unit dose delivery system began in November, 1982.

According to Gasser, from the time of the alleged breach in 1982, his business suffered a drastic reduction in net profits. JKV does not argue the question of breach in this appeal. In order to prove his loss Gasser introduced evidence at trial regarding the net profits of his business from 1978 through 1986.

Gasser's wife Sandra, who did the bookkeeping for the pharmacy, testified that prior to the alleged breach of the lease she and her husband had 90% of the pharmaceutical business from the VCC. She testified that net profits represented gross receipts minus the cost of merchandise and other expenses including rent, telephone, insurance, wages, delivery and licensing. As to the net profits of the pharmacy prior to the alleged breach in 1982, Mrs. Gasser testified as follows: 1979—$56,783; 1980—$43,053; 1981—$42,522; 1982—$46,976. For the years following the implementation of the unit dose delivery system she testified as follows: 1983—$26,743; 1984—$16,121; 1985—$22,009; 1986—$16,455. These amounts were taken from the Federal income tax returns that were prepared by Mrs. Gasser and admitted into evidence at trial only as proof of the net profits.

Gasser also retained the services of Mark Hauber, an accounting expert who testified as to an estimate or projection of lost profits for the period of the claimed loss. According to Hauber, the projection of lost profits over the period of the lease following the alleged breach, was in the amount of $211,047. He arrived at this figure by reviewing the records of the pharmacy, including cash register tapes, the general journal, the general ledger and tax returns. By reviewing the past figures on historical data of a business and through the use of percentages, assumptions and averages applicable to accounting practices, Mr. Hauber testified that he could determine projected profits following the breach. Mr. Hauber also based his projection on the expenses which would have to be incurred by the pharmacy had Gasser implemented the unit dose delivery system. Additionally, Mr. Hauber had available for comparison the revenues or summary of monthly gross sales for Parkville Apothecary beginning December 1, 1982 and ending July 1, 1987—some five and one-half years. Finally, Mr. Hauber had prepared a schedule of sales made by the Gasser Pharmacy to VCC for every year from 1978 through 1987. He obtained the amounts from information provided him in the books, records and general ledgers of the pharmacy. To compute the amount of sales made by the Gasser Pharmacy to VCC it was necessary to subtract the amount of sales made to other apartment residents at JKV.

In point one Gasser argues that the trial court erred in granting the motion for judgment notwithstanding the verdict in favor of JKV because sufficient evidence was presented to make a submissible case on lost profits. In granting the judgment notwithstanding the verdict the trial court found that Gasser had failed to meet the burden of establishing anticipated profits with reasonable certainty. The trial court, in reaching this conclusion, relied on *Brown v. McIBS Inc.*, 722 S.W.2d 337 (Mo. App.1986), and the case therein cited of *Yaffe v. American Fixture, Inc.*, 345 S.W. 2d 195 (Mo.1961), in finding that in Missouri, damages for loss of anticipated profits resulting from the actionable conduct of another are recoverable only when they are made reasonably certain by proof of actual facts which present data for a rational estimate of such profits. The trial court found that the proof must be sufficiently definite so as to allow a reasonably accurate estimate of the loss without resorting to speculation. *Tnemec Company, Inc. v. North Kansas City Development Co.*, 290 S.W.2d 169, 174 (Mo.1956). Further, the trial court found that to satisfy this standard of proof, the evidence must include the income and expenses of the business for a reasonable anterior period, with a consequent establishing of the net profits during the previous period, citing *Brown, supra* at 341.

JKV maintains that Gasser failed to prove his claim of lost net profits with

reasonable certainty because there was no evidence presented regarding the pharmacies actual income and expenses from sales of pharmaceuticals to the VCC and what evidence was presented lacked a proper foundation and was speculative. More specifically, JKV points to the testimony at trial of Mrs. Gasser, the pharmacy bookkeeper, and Mr. Hauber, the expert accountant. JKV argues that Mrs. Gasser's testimony established the failure of the pharmacy to keep financial records in that she testified there was no accurate source document to identify sales to the VCC, no way to determine the cost of goods sold to VCC patients and she admitted that the inventory information which formed the data for the tax returns were not produced through an actual physical inventory. JKV also directs this court's attention to the testimony of Mr. Hauber wherein he stated the sales to the VCC and the cost of goods sold prior to or after the implementation of the unit dose system could not be determined because of the way the records were kept. Therefore, the argument goes, because there was no proof of actual lost profits on sales to VCC patients. Hauber had to resort to a projection of profits which had no factual basis because the assumptions, estimates and averages which formed the basis for Hauber's opinion were based on incomplete and inadequate tax and financial data.

Gasser, on the other hand, maintains that he has sustained his burden of proving the fact of damages, that is, lost profits, with a reasonable degree of certainty. He argues that once the fact of lost profits is proven, the next inquiry becomes whether there is sufficient evidence as to the amount of lost profits, proof of which requires a lesser degree of certainty. A great deal of emphasis is placed on the case of *Ohlendorf v. Feinstein*, 670 S.W.2d 930, 933 (Mo.App. 1984), wherein the court noted the distinction drawn between the degree of certitude required to establish the fact of damages and the lesser certainty required regarding the amount of damages. *citing Coach House of Ward Parkway, Inc. v. Ward Parkway Shops, Inc.*, 471 S.W.2d 464 (Mo. 1971).

■ Gasser correctly maintains that the modern emphasis on the requirement that damages be shown with certainty is on the fact of damages and not on the particularized amount. *Herrington v. Hall*, 624 S.W.2d 148, 153 (Mo.App.1981). Where the damages are in the nature of lost profits, all that can be required is to produce all the relevant facts tending to show the extent of the damages and one is not excused for a breach of contract resulting in damages simply because those damages may not be established with certainty. *Hargis v. Sample*, 306 S.W.2d 564, 569 (Mo.1957).

■ As the trial court found, recovery of anticipated profits of an established business, such as the Gasser Pharmacy, can be obtained " 'only when they are made reasonably certain by proof of actual facts, with present data for a rational estimate of their amount ...' " as shown by " 'proof of the income and expenses of the business for a reasonable time anterior to its interruption, with a consequent establishing of the net profits during the previous period' " *All Star Amusement, Inc. v. Jones*, 727 S.W.2d 930, 931 (Mo.App.1987), citing *Coonis v. Rogers*, 429 S.W.2d 709 (Mo. 1968). While lost profits must be proven with reasonable certainty, this court has recognized that "[i]n some cases, the evidence weighed in common experience demonstrates that a substantial pecuniary loss has occurred, but at the same time it is apparent that the loss is of a character which defies exact proof. In that situation, it is reasonable to require a lesser degree of certainty as to the extent of loss, leaving a greater degree of discretion to the court or jury. This principle is applicable in the case of proof of lost profits." *Ranch Hand Foods, Inc. v. Polar Pak Foods, Inc.*, 690 S.W.2d 437, 444-45 (Mo.App.1985) (citations omitted).

■ Although the standard of proof for the extent of damage may be less than reasonable certainty in some situations, the loss of prospective or anticipated profits must be supported by the best evidence available. *Hargis, supra* 306 S.W.2d at 569. The proof must be sufficient to provide a rational basis for estimating the

amount of loss sustained. *Swiss–American Importing Co. v. Variety Food Prod. Co.*, 471 S.W.2d 688, 690 (Mo.App.1971). The estimate of loss may not be based on speculation or conjecture. *Id.*

Following the standards set forth above and as reiterated by a wealth of case precedent, the record herein establishes that the Gassers' proof of loss was sufficient.

JKV places a great deal of emphasis on the inability of Gasser to prove what portion of the pharmacy's total sales went to the VCC and blames this inability on the failure of the pharmacy to keep financial records of these transactions.

Exhibit 36 introduced at trial and entitled John Knox Village Pharmacy VCC sales 1978–1987, was prepared by Hauber from information provided in the books and records of the general ledger. He testified that he used mainly the general ledger for Institutional Apartments—Account 412, which is made up of institutional (VCC) and apartment sales. From the amount of institutional sales he subtracted the amount of apartment sales. He obtained the amount for apartment sales from weekly schedules provided by the pharmacy to JKV. The resulting difference between institutional sales and apartment sales yielded the Sales to VCC figures. This calculation was done for every year—from October, 1978 to November, 1982. It is true as JKV maintains, that the records were not kept in a fashion such that the exact amount of sales to VCC could be determined. However, as previously stated, the standard for proving the amount of damages is not absolute certainty. In this situation, Gasser presented the best evidence available as to sales made to VCC.

JKV's reliance on the case of *Chmieleski v. City Products Corp.*, 660 S.W.2d 275 (Mo.App.1983), does not aid them as that case is readily distinguishable. In that case Chmieleski, a variety store franchisee brought suit against City Products Corp., the franchisor alleging in pertinent part, *lost profits due to a breach of a written franchise agreement containing a covenant not to lease to competitors.* In that case this court found that the sales/profit pro-

jections were found to be insufficient where the calculations, which formed the basis for the projections were prepared by someone, the identity of whom was not known, with City Products, the defendant. These projections were complied and included in a store proposal issued by City Products to Chmieleski. Furthermore, the expert called on behalf of Chmieleski made no use of the actual sales of Chmieleski and merely used sales/profit projections, issued by City Products, for two of three years, prescribed a projection for the second year and applied the consumer price index to derive his opinion.

JKV also maintains that Gasser's historical data were incomplete and inadequate to provide a basis for an opinion regarding expenses allocable to the sales made to VCC. Therefore, JKV argues, Gasser was forced to resort to a projection of lost profits based upon assumptions and estimates and thus failed to present the best evidence available. Exhibit 38, introduced at trial and entitled Unit Dose Sales—Lost Profit by Year, December 1, 1982—September 31, 1987, was prepared by Hauber as his projection of lost profits. Hauber began with the Gross sales of Parkville Apothecary to JKV. These amounts were obtained from the gross amounts billed through the VCC for Parkville Apothecary and included in Exhibit 23. These amounts represented sales which Gasser maintained would have been made by his pharmacy had JKV not breached the exclusive lease. From these gross sales figures Hauber subtracted the cost of goods sold by the Gasser pharmacy. The cost of goods sold figures were arrived at by averaging the cost of goods for the years 1978 through 1982 from the tax returns and by making assumptions about costs actually incurred and costs projected to be incurred. Subtracting the cost of goods sold from the gross sales equalled the gross margin. From the gross margin was subtracted the expenses which would have to be incurred by Gasser to implement a unit dose delivery system. The resulting sums were the projection of the claimed "future lost net profit" of Gasser pharmacy.

Contrary to JKV's contention, the absence of an exact dollar amount for expenses was not fatal to Gasser's case. Hauber testified that it was very uncommon for this type of "mom and pop" business (referring to the pharmacy) to set up the books to allocate expenses to each category of sales. There was testimony from Mrs. Gasser as to the expenses that would be necessary to implement a unit dose delivery system. This information was obtained by Mrs. Gasser from an investigation of the costs of the necessary items to implement the system including carts for the distribution of medication, plastic packets and bubbles, employee wages, social security taxes, unemployment taxes, insurance and the like. There was, therefore, evidence before the jury of the expenses which although not exact were sufficient to provide a rational basis from which the jury could estimate the loss in profits. JKV complains that these amounts were obtained in 1987 and should have been from 1982, the time of the breach. This argument was before the jury by way of impeachment. It cannot be said that the jury did not consider this information in estimating the amount of profits lost by the Gasser pharmacy.

JKV argues further that the evidence of Gasser's ordinary income from the pharmacy as reported in the partnership tax returns was insufficient for proof of lost profits. JKV relies on the case of *Jack L. Baker Companies v. Pasley Manufacturing and Distributing Co.*, 413 S.W.2d 268 (Mo.1967), for the proposition that tax returns are insufficient to prove lost net profits as a matter of law. Exhibit 34, admitted at trial, was a bar graph prepared by Hauber summarizing the net profits of the pharmacy for the years 1978 through 1986. The information used to supply the figures for this exhibit were taken from the ordinary income line of the pharmacy's income tax returns for each of the years in question. JKV's reliance on *Jack L. Baker* for support herein is not apposite. In that case the court found that under the particular circumstances of the case the corporate tax returns of a business introduced as proof of lost profits lacked the requisite

substantial basis for determining the lost profits. The court, among other things, reasoned that there was no evidence to show a steady trend from loss to profit for the years in question, 1962 to 1964, no evidence to show a month by month increase in business for one of the years in question, and that the monthly profit and loss figures for the year that the lost profits were claimed reflected a very uneven and erratic performance regarding profits. *Jack L. Baker, supra*, at 271. The court did not, however, as JKV seems to suggest, create a per se rule that tax returns are insufficient to show lost profits in every case. Rather, the court limited its holding to that particular case.

JKV also complains that the financial information from the pharmacy, including receipts, invoices, ledgers, journals, sales reports and other alleged records and partnership tax returns upon which Hauber based his expert opinion were not in evidence for proof of the substantive information which they contained. The pertinent information from this financial data was summarized by Hauber and included in the exhibits which were produced to prove net profits. The exhibits at issue were Exhibits 25 through 33 which consisted of six boxes of receipts, one manila folder containing the general ledger entries and ledger accounts and two books, the general ledger and general journal.

Hauber testified that he had reviewed this information and that the books and records were sufficient to satisfy the statutory requirement in the preparation of tax returns. He also testified that the books and records were kept on the cash basis method of accounting and that they were kept in accordance with generally accepted accounting principles. Hauber stated that he works with these type businesses day in and day out and that in his professional judgment the records were in very good shape for a "mom and pop" operation.

The exhibits prepared by Hauber represented summaries of information extracted from Gasser's own business records. The records herein were obviously voluminous and it is perfectly acceptable to use summaries of records under these circumstances. *Killian Const. Co. v. Tri–City Const.*

*Co.,* 693 S.W.2d 819, 834 (Mo.App.1985). The rule which allows such summaries does not dispense with production of the original document and therefore does not infringe on the best evidence rule. The rule operates to enable proof otherwise beyond practicability:

> Where a fact could be ascertained only by the inspection of a large number of documents made up of very numerous detailed statements ... it is obvious that it would often be practically out of the question to ... requir[e] the production of the entire mass of documents and entries to be perused by the jury or read aloud to them. The convenience of trials demands that other evidence be allowed to be offered, in the shape of the testimony of a competent witness who has perused the entire mass and will state summarily the net result ... Most courts require, as a condition, that the mass thus summarily testified to shall ... be made accessible to the opposing party, in order that the correctness of the evidence may be tested by inspection if desired, or that the material for cross-examination may be available. *Id.* citing IV Wigmore on Evidence (Chadbourn Rev.) § 1230 (1972).

In light of this rule, JKV's suggestion regarding the financial information produced at trial is not well taken.

█ Viewing the evidence, in the light most favorable to the verdict, as this court is bound to do, leads to the conclusion that sufficient evidence was presented from which the jury could estimate the amount of lost profits with reasonable certainty. The key term is *estimate.* Rarely, if ever, is a party claiming loss of prospective profits with absolute certainty as JKV demands. It must be borne in mind that prospective profits are to some extent uncertain and problematic, and so, on that account or on account of the difficulties in the way of proof, a person complaining of breach of contract need not be deprived of all remedy. 22 Am.Jur.2d § 624 (1988). Uncertainty as to the amount of profits that would have been made does not prevent a recovery. *Id.*

█ Mr. Gasser produced evidence that pharmaceuticals, dispensed under the unit dose delivery system, were dispensed and delivered by the competitor, Parkville Apothecary, to VCC patients. There was evidence that prior to the breach of the lease the pharmacy had between 80 and 90% of the business at VCC but that following the breach, 80–83% of the business was going to the competitor. It is reasonable to assume that these sales would have been by the Gasser pharmacy had JKV honored the exclusive terms of the lease.

Gasser presented evidence at trial concerning the net profits from sales to JKV, that is, income and expenses for the appropriate "reasonable time anterior to the interruption of his business as well as the consequent establishing of net profits for the previous period." *See, Coonis, supra.* The evidence presented was the best that Gasser had available, all the records of his business from 1978 through 1986. Simply because JKV alleges that the books and records should have been kept in a different or better fashion does not mean that a remedy is precluded. Gasser presented evidence of lost profits by way of Mrs. Gasser, who kept the books for the pharmacy and Mr. Hauber who projected the profits. The jury, as the trier of fact, had before it the evidence as to lost profits. The jury, being the sole judge of the weight to be given the testimony of witnesses may choose to believe or disbelieve any part of that testimony. *Lewis v. Envirotech Corp.,* 674 S.W.2d 105, 111 (Mo.App.1984). JKV had ample opportunity to discredit the evidence by way of cross-examination, which was obviously, at least in part successful as the jury returned a verdict in an amount approximately half what Gasser requested. Because this court finds that Gasser produced sufficient evidence of lost profits, the decision of the trial court to grant the judgment notwithstanding the verdict must be reversed and the jury verdict reinstated.

All concur.