**Ervin COLE, Jr., Appellee,**

v.

**CONTROL DATA CORPORATION, Appellant.**

No. 90–2685.

United States Court of Appeals, Eighth Circuit.

Submitted June 10, 1991.

Decided Oct. 16, 1991.

Rehearing and Rehearing En Banc Denied Dec. 4, 1991.

Daniel T. Rabbitt, St. Louis, Mo., argued (Steven H. Schwartz, on the brief), for appellant.

Susan Nell Rowe, St. Louis, Mo., argued (Michael A. Fisher, on the brief), for appellee.

Before JOHN R. GIBSON, Circuit Judge, ROSS and HENLEY, Senior Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

Control Data Corporation appeals from a judgment entered on a jury verdict in favor of Ervin J. Cole, Jr., on Cole's claims for breach of contract and conversion arising out of a software program that he developed while employed by Control Data. Control Data argues that the district court erred in denying judgment notwithstanding the verdict because the software program was its property, Cole had no right to possess it, Cole destroyed the software himself, and there was no evidence that Control Data intended to deprive him of access to it. Control Data also contends that any partnership between Cole and the company was terminable at will, there was insufficient evidence of damages, and the punitive damage award violates its constitutional rights. Control Data further argues error in the giving of instructions and admission of damages testimony. We affirm the district court's judgment with respect to actual damages, but remand for review of the punitive damage award under *Pacific Mutual Life Insurance Co. v. Haslip*, — U.S. —, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991).

Action Data Services Group, a division of Control Data, employed Cole as a software programmer. While so employed, Cole developed a software program. About these facts there is little dispute, but from that point on the evidence the parties presented converges only with respect to a few details. Cole testified that he developed, on his own time, a software program that would allow a personal computer to communicate with Action Data's mainframe computer through Control Data's network. Control Data's evidence was that Cole developed the program on Control Data's time using Control Data's materials. Cole's evidence is that an Action Data manager made an oral agreement with him in which Action Data would market the software and share the profits with Cole. Cole states that in late 1986 another Action Data manager ordered him to destroy the software program on the company's premises or be fired, and that Cole did so.

Cole brought this diversity action, and following an eight-day trial, submitted his case on two counts: breach of contract and conversion. The jury returned a verdict against Control Data on the breach of contract claim for $150,000 in actual damages, and on the conversion claim for $2,000,000 in actual damages and $500,000 in punitive damages. *Cole v. Control Data Corp.*, No. 87–1952C(5), slip op. at 1 (E.D.Mo. Apr. 27, 1990).

We will supplement the facts as necessary to decide the issues raised in this appeal.

I.

Control Data argues that it was entitled to judgment notwithstanding the verdict on both the breach of contract and conversion claims. The Supreme Court instructs us to review issues of state law de novo, giving no deference to the district court's ruling. *Salve Regina College v. Russell*, — U.S. —, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991). In reviewing Control Data's arguments, we must consider the evidence in the light most favorable to Cole, give him the benefit of all reasonable inferences, and resolve factual conflicts in his favor. *Craft v. Metromedia, Inc.*, 766 F.2d 1205, 1218 (8th Cir.1985), *cert. denied*, 475 U.S. 1058, 106 S.Ct. 1285, 89 L.Ed.2d 592 (1986). Control Data cannot prevail if the evidence so viewed would allow reasonable jurors to differ as to the conclusion that could be drawn. *Id.*

We observe that Control Data, while seemingly recognizing these standards of review, makes primarily factual arguments, presenting the evidence in the light most favorable to its position. Such argu-

ments are of little help in determining whether Cole made a submissible case.

## A.

We turn first to the breach of contract claim. The district court instructed the jury that it must find for Cole if it believed that: Cole developed the program on his own time, using his own equipment and resources; that the parties entered into an agreement under which Cole agreed to provide the program to Control Data and to assist it in finalizing the formatted screens for the program, and Control Data agreed to pay for the costs of producing and marketing the program, and to share any profits from the sale of the program equally with Cole. The court further instructed that to return a verdict for Cole, the jury had to find that Cole performed the agreement, Control Data failed to perform the agreement, and Cole was damaged. These findings were but underscored in an instruction requiring a finding for Control Data unless the jury found that Cole developed the program on his own time using his own equipment and resources, and there was an agreement between Cole and Control Data.

■ We have little question that the evidence fully supported submission of the breach of contract claim, and that the district court did not err in denying the motion for judgment notwithstanding the verdict. Action Data Services employed Cole in 1979. He purchased his personal computer in October 1981, and over the next two and one-half years purchased approximately $12,000 worth of hardware and software with his own funds to write the software program. Both Cole and his supervisor, Dave Clark, testified that Cole worked on the program at his home on his own personal time using his personal computer. Cole completed the bulk of his program by April 1984. Control Data did not obtain a personal computer for Cole's department until November 1984. Cole estimated that before he entered into the agreement with Control Data he spent approximately 2,100 to 2,200 hours developing this program. Cole had his personal computer on Control Data premises only when he demonstrated his program, and on one other occasion when he demonstrated an unrelated software program.

Cole mentioned the program to Clark after developing two portions of it, and Clark stated that Cole's division was not involved in this kind of business and could not expend manpower on it. After two demonstrations for Clark, Clark said he thought the program might be worthwhile, but still could not expend funding or personnel for such a project. Nonetheless, Clark said that he would present it to the management of Cole's division. After a third demonstration for Clark, however, which occurred in August or September 1984, Clark had two employees of the division expand the data base. Clark then provided Cole with log-on identification numbers and 800 telephone numbers, and Cole obtained terminal identification codes, so that Cole could gain access to the on-line system of Control Data's computers. Cole testified that he used these items only for on-line testing, a process which he explained was separate from developing of the program.

In November 1985, Cole completed a submission form in compliance with company policy for submitting employee-developed software, and placed it in the company mail on December 3, 1985. Cole testified that on the next day, Thomas Fitzgibbons, the manager for his division, approached him and told him that the division had reconsidered his project and wished to join Cole in finalizing and marketing the product to customers. Fitzgibbons stated that the division would back Cole financially and purchase any hardware and software necessary to present the program as a final product to its customers, assist Cole in developing the screens for the program, and that Control Data would take responsibility for marketing the program to its customers. Fitzgibbons also said that Cole would be responsible for any program changes, and that the profits from the endeavor would be split with Cole as in any partnership. He also advised Cole that the company offer was conditioned upon Cole's

retrieving his submission form from the company mail. Cole agreed, and Fitzgibbons assisted Cole in retrieving the form.

Cole's evidence was that he had completed the bulk of his program by April 1984, about a year and a half before the date of the contract. After making the contract with Fitzgibbons, Cole brought a copy of the program to Action Data and placed it in the company computer. After several months, Cole deleted the copy of the program he kept at home on his personal computer because he kept all backup copies of the program at Action Data. Pursuant to Fitzgibbons' instructions, Cole began to purchase software for use with the program and was reimbursed by Control Data through employee expense reports. There was evidence that Control Data, without Cole's knowledge, showed the program to Manufacturer's Hanover, one of its major customers, to try to sell the program.

The program was ready for marketing by the fall of 1986. Later that same year, however, Leslie Getz, Cole's manager at the time, ordered Cole to delete his program from the company's computer along with all files Action Data had not purchased. He informed Cole that "no unauthorized software should be on any company ... computer." Getz refused Cole's request to copy the program or transmit it over telephone lines to his personal computer at home, and Getz told Cole he would be fired if he attempted to do so.

Control Data argues that Cole had no cause of action for breach of contract because when Cole began working for the company in 1979, he signed an Employee Disclosure and Assignment Agreement stating that any software employees developed, either on their own time or company time, belonged to the company. Control Data later instituted a policy which stated:

> Today, Control Data has a new policy that will promote the development of software by you on your own time. This policy makes it possible for you to obtain ownership of software developed on your own time and equipment, and possibly receive payment from Control Data for the use of that software.

Control Data claims that its later policy regarding employee-developed software could not affect Cole's original employee agreement, and that Cole did not comply with the new policy's requirements anyway. These arguments are meritless. Sufficient evidence existed for the jury to conclude that Control Data chose to deal with Cole outside of any established company procedures. For example, Fitzgibbons offered to market Cole's program on the condition that Cole retrieve his submission form from the company mail. Control Data argues that Cole failed to follow company policy in the face of evidence that it urged him to forego compliance with it.

The facts that we have outlined above considered in a light most favorable to Cole and given all favorable inferences fully support the jury's findings that Control Data breached its contract with Cole.

### B.

Control Data also argues that it was entitled to judgment notwithstanding the verdict on the conversion claim because Cole had no immediate right to exclusive possession of the software, Cole destroyed the software himself, and no evidence existed showing that Control Data intended to deprive Cole of access to or possession of the software.

We have already discussed the instructions given for the breach of contract claim. The first two paragraphs of the conversion instruction were identical to the first two paragraphs of the breach of contract instruction. The conversion instruction further required findings that Cole entrusted the program to Control Data, that Cole was entitled to possession of the program, and that Control Data intentionally deprived Cole of access to and possession of the program. The district court further instructed that Control Data was entitled to a verdict in its favor, unless the jury found that Cole developed the program on his own time using his own equipment and resources, and that Control Data caused the software program to be destroyed.

■ While Control Data argues that Cole failed to show a right of *exclusive* possession of the software, the instructions required that Cole show that he was entitled to *possession* of the program. The word "exclusive" was not contained in this instruction, and Control Data did not object to the instruction in this particular respect. Moreover, Missouri law provides that the aggrieved party in a conversion action need have only a *right* —not an exclusive right—to the property in question. *See, e.g., Jackson v. Premier Service Corp.,* 761 S.W.2d 648, 650 (Mo.Ct.App.1988); *Kessler v. Reed,* 481 S.W.2d 559, 562 (Mo.Ct.App. 1972); *National Surety Corp. v. Hochman,* 313 S.W.2d 776, 782 (Mo.Ct.App. 1958); *Jackson v. Rothschild,* 99 S.W.2d 859, 861 (Mo.Ct.App.1936). Even assuming that Control Data had some right to possess the software under a partnership property theory, the jury determined that Cole was entitled to possess the software, giving him a submissible case for conversion.

Control Data argues that Cole has no claim for conversion because he destroyed the software himself. Control Data states that it committed no affirmative act to destroy the software and used no physical force or threat of physical violence. Control Data argues that it merely threatened to fire Cole, an act for which Cole would have had no claim, because he was an at-will employee. It further contends that Cole had access to the software because he destroyed it, and thus, was not deprived of access to it.

On similar grounds, Control Data argues that there was no causal link between Getz's order to destroy the software and Cole's damages. Control Data contends that the direct and proximate cause of Cole's damage was his own destruction of the program and further, that his theory is akin to duress but that he did not prove duress. Control Data contends that if Cole had kept a copy of the software at home he would have no cause of action for it or its destruction, and there was no evidence that Control Data knew that Cole had previously destroyed all other copies of the program. It argues that it only intended to deprive Cole of the copy of the program on

Action Data's premises, and not the program itself.

■ Control Data's arguments, insofar as they do any more than present a jury argument as to the merits of the case, possess the legal failing that they are posed in a light most favorable to Control Data. As we have stated above, we must consider the evidence most favorable to Cole, giving him the benefit of all favorable inferences and resolving all conflicts in the evidence in his favor. There was evidence that Getz ordered Cole to delete his program from the company computers, refused Cole's request to make a copy of the program, and told Cole that another computer programmer would check the computers and diskettes at the end of the day to make sure that Cole had complied with Getz's order. There was also evidence that Getz monitored Cole's activities throughout the day, that Getz searched both Cole and his briefcase when he left the premises that day, and that Control Data monitored the telephone lines between Cole's home and the company that day. We have no doubt that there was ample evidence to support the jury's finding that Control Data intentionally deprived Cole of access to and possession of the program. Control Data's arguments do not require further discussion.

## II.

■ Control Data also argues that it was entitled to judgment notwithstanding the verdict on the breach of the "oral partnership agreement" because the alleged partnership was terminable at will and the company received no profits to which Cole was entitled. Control Data's argument is deficient because Cole submitted his case on a breach of contract theory. While there was reference to a partnership in the testimony, the ultimate issue submitted was that Control Data failed to pay for the cost of producing and marketing the program and to share profits, and hence, failed to perform its agreement. Control Data's ar-

guments regarding partnership law are therefore irrelevant and without merit.[1]

### III.

Control Data further argues that it is entitled to judgment notwithstanding the verdict on both counts because there was no evidence of the program's fair market value and the lost profit evidence was based on speculation and conjecture. Under Missouri law, Cole was not required to prove the exact amount of his damages, but only to produce evidence which established them with reasonable certainty. *Coach House of Ward Parkway, Inc. v. Ward Parkway Shops, Inc.*, 471 S.W.2d 464, 468–71 (Mo.1971). Moreover, it is the fact of damages, rather than the amount of damages, which must be proven with reasonable certainty. *Gasser v. John Knox Village*, 761 S.W.2d 728, 731 (Mo.Ct.App. 1988). While Control Data contends that Missouri courts consider future profits to be too remote and speculative to be recoverable, our review of the relevant case law persuades us otherwise. In *Gasser*, the Western District Court of Appeals of Missouri stated:

> Where the damages are in the nature of lost profits, all that can be required is to produce all the relevant facts tending to show the extent of the damages and one is not excused for a breach of contract resulting in damages simply because those damages may not be established with certainty.

*Id.* at 731. *See also Hargis v. Sample*, 306 S.W.2d 564, 569 (Mo.1957). We believe that the expert witness's testimony, setting forth three different pricing structures that willing purchasers would have offered, and the remainder of the evidence as to lost profits, provided the jury with adequate information to calculate Cole's damages with a reasonable degree of certainty. We also believe that Cole's expert witness provided the jury with sufficient evidence to determine the software's fair market value without resorting to speculation or conjec-

ture. We give even greater weight to the plaintiff's evidence on damages, when, as here, Control Data made no effort to offer any alternative theory or evidence on this issue. *Cunningham v. City of Overland*, 804 F.2d 1066, 1070 (8th Cir.1986).

### IV.

Control Data argues that it was entitled to judgment notwithstanding the verdict with respect to the jury's award of punitive damages because Cole failed to prove that Control Data's conduct was outrageous, as required by Missouri law, and because the award violated its constitutional rights.

We have outlined the evidence above concerning Control Data's order that Cole destroy his software program and its refusal to permit him to copy it. There was also evidence that Control Data demonstrated Cole's program to one of its major customers in an attempt to sell the program without Cole's knowledge and evidence that supports an inference that Control Data may have retained a copy of the program. The district court did not err in failing to enter a JNOV for Control Data on the issue of punitive damages.

Control Data also argues that the award of punitive damages violates its due process rights under the fourteenth amendment of the United States Constitution. In *Pacific Mutual Life Insurance Co. v. Haslip,* —— U.S. ——, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991), the Supreme Court recently considered both the requirements of the jury instructions on this subject, and the requirements for state trial and appellate court review of these cases. The Court upheld Alabama's standard for reviewing a jury's punitive damage award: the trial court must be "reasonably satisfied from the evidence" that the jury's award is not excessive or inadequate. *Id.* 111 S.Ct. at 1045, 1046 n. 11. *Haslip* further determined that the due process clause of the fourteenth amendment does not require a standard of proof of punitive dam-

---

1. Control Data also argues that the district court erred in instructing the jury on damages because the "oral partnership" was terminable at will. We are satisfied that the district court did not err in giving these instructions, and see that little is to be gained by a detailed discussion.

ages beyond a preponderance of the evidence. *Id.* 111 S.Ct. at 1046 n. 11. We have recently considered several cases involving this issue. *See, e.g., Robertson Oil Co. v. Phillips Petroleum Co.,* 930 F.2d 1342, 1346 (1991) ("Under *Haslip* we must evaluate both the jury instructions as to the punitive damages award and the adequacy of judicial review of the jury's award.").

Control Data argued generally that the award of punitive damages is unconstitutional, but made no claim as to the constitutional deficiency of the instruction. We are concerned, however, whether the district court has appropriately reviewed the punitive damage award. We believe that remand is required so that the district court may conduct this review under the standards articulated in *Haslip,* 111 S.Ct. at 1044, applying the appropriate principles of Missouri law.

### V.

Control Data argues that the district court erred in a number of jury instructions. It claims that Instructions 11 and 14, which instructed the jury that it must find that Cole developed the program "on his own time" using his own equipment and resources, were erroneous because the issue was whether Cole created the program *entirely* on his own time, using *only* his own resources. Control Data bases this argument upon language the district court had used in ruling on a previous motion for summary judgment. We need not consider the conflict of the earlier ruling with the instructions given because Control Data's own internal submission form and brochure track the language of the instructions. Control Data's submission form refers to software which employees developed on their own time, using their own resources and facilities. Control Data's brochure also refers to microsoftware that employees have developed "on their own personal time," "on your own time," and "on your own time and equipment...."

Control Data further contends that Instruction 14 is vague, and that it fails to address the issue of duress. As we have explained above, the instruction properly listed the correct elements of conversion. Furthermore, Cole did not submit a claim of duress, making any instruction on the issue unnecessary.

### VI.

Control Data makes two arguments relating to the damages awarded Cole. It first argues that the damages for breach of contract and conversion are duplicitous, allowing Cole double damages for a single injury based on alternative theories of liability. Control Data reasons that if Cole had been excluded from the partnership he would have been entitled at most to either the profits from the continuation of the business or an amount equal to his alleged interest in the partnership. Here, the "partnership" did not continue and the jury was allowed to award both lost profits from the partnership and the entire fair market value of the software under the conversion theory. By receiving his share of profits from the marketing of the software, Control Data argues, Cole received full compensation. We reject this argument.

A plaintiff is not entitled to double damages for a single injury based on alternative theories of recovery. *Greenwood Ranches, Inc. v. Skie Construction Co.,* 629 F.2d 518, 521–22 (8th Cir.1980). The *Greenwood* plaintiff alternatively pleaded breach of contract and negligence theories and received separate awards on each theory. This court reversed for retrial on damages because the plaintiff had recovered double damages for one injury "flowing essentially from a single transaction." *Id.* at 521. A plaintiff may, however, recover damages on two separate causes of action if the damages result from separate injuries. *See Clayton Brokerage Co. of St. Louis, Inc. v. Pilla,* 632 S.W.2d 300, 305–06 (Mo.Ct.App.1982) (recognizing that a plaintiff may recover damages for both breach of contract and fraudulent inducement to enter into the contract as long as she can demonstrate two distinct injuries). The parties have not brought to our attention cases either from Missouri or this circuit that come closer to

the issue than these. *Stein v. Jung*, 492 S.W.2d 139 (Mo.Ct.App.1973), dealt with termination of a partnership, and while Control Data so characterizes the action in this case, the issue submitted to the jury was for breach of contract to market the software. Under the circumstances, we conclude that Cole sought separate damages for the breach of contract, namely, the loss of profits for Control Data's failure to market the software program, and separate damages for conversion, namely, the value of the software program itself. We are not convinced from the briefings of the parties that under Missouri law these were other than separate causes of action claiming two different injuries, and that Cole was entitled to recover on both.

■ Control Data's second argument regarding damages relates to Instruction 13. Control Data alleges that the instruction failed to tell the jury that Cole's damages for breach of contract were limited to a percentage of the profits obtained by the partnership, and failed to limit damages to breach of contract. A review of the record shows that there was enough evidence to allow the jury to calculate damages without needing to include a clause in the instruction limiting Cole to a percentage of profits. Furthermore, the language of Instruction 13 specifically refers to compensation for breach of contract, which can include lost profits. *See, e.g., United Indus. Syndicate, Inc. v. Western Auto Supply Co.*, 686 F.2d 1312, 1316 (8th Cir.1982) (compensation in breach of contract claim may include lost profits). The instruction was not erroneous.

### VII.

■ Finally, Control Data argues that the testimony of Cole's expert regarding Exhibit No. 197 was based on speculation, conjecture and hearsay. We are satisfied that Cole's expert utilized standard market research practices as the basis for his testimony and the exhibit in question, and that there was no error in admitting this evidence. Its weight was a matter for jury consideration.

We affirm the judgment of the district court, but remand for review of the punitive damage award under instructions consistent with this opinion.