**Gerald J. IBARRA, Appellant,**

v.

**MISSOURI POSTER & SIGN CO., INC., Respondent.**

**No. WD 45339.**

Missouri Court of Appeals, Western District.

July 28, 1992.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 1, 1992.

Application to Transfer Denied Oct. 27, 1992.

James G. Lindquist, Kansas City, for appellant.

Theodore C. Beckett, II, Kansas City, for respondent.

Before LOWENSTEIN, C.J., and BERREY and SMART, JJ.

BERREY, Judge.

Following trial to the court, the trial court entered judgment against appellant, Gerald J. Ibarra, for respondent, Missouri Poster & Sign Co., Inc. (Missouri Poster), in the amount of $14,027.14, representing

$7,143.39 damages in lost profit and $6,883.75 attorney's fees, and enforced the covenant not to compete contained in the Employment Agreement entered into between the parties. Appellant appeals the court's enforcement of the covenant not to compete and the award of damages. He does not appeal the award of attorney's fees. The decision of the trial court is affirmed in part and reversed in part.

On October 1, 1985, Ibarra and Missouri Poster entered into an Employment Agreement. The Agreement states in pertinent part:

4. Employee acknowledges that as a part of the employment relationship created hereunder, the Employee will obtain information concerning the Employer's methods of operation and trade secrets, including but not limited to names of both actual customers and prospective customers, price structure, salary structure, production techniques, sales techniques and employee names, and that such information is confidential and could be damaging to the Employer's relationship with its customers, sales efforts and production capabilities if divulged to any other party. Therefore, Employee agrees that during the term of this Agreement and for a period of two (2) years thereafter, Employee will not divulge, in any manner whatsoever, to any competitor of Employer or to any other party whatsoever, under any circumstances, any such information.

5. The Employee's compensation, including any fringe benefits, will be negotiated separately from time to time by the Employer and Employee.

. . . .

7. Employee agrees that during the term of this Agreement and for a period of two (2) years thereafter, Employee shall not within a radius of two hundred (200) miles of Kansas City, Missouri, directly or indirectly, individually or in concert with others, or through the median [sic] of a corporation, partnership, association, joint venture or otherwise, whether as an employee, owner, partner, representative or in any other capacity, engage in any business or represent any other company which supplies products or services which are similar to or are competitive with those provided at any time during the term of this Agreement by Employer.

Paragraph 8 provides for payment of damages and attorney's fees in the event Ibarra breached the Agreement and gave Missouri Poster the right to enjoin appellant from performing any services or taking any actions violative the provisions of the Agreement.

At Ibarra's request, three paragraphs, drafted by Ibarra, were added to the Agreement as page 4, wherein the respondent agreed: (1) not to take territory or clients away from appellant; (2) not to transfer appellant; and (3) not to "restrict appellant's opportunity to maintain or increase current levels of salaries and commission by changing the SALES AGREEMENT" unless discussed and agreed to by both parties. At the same time, a separate "SALES AGREEMENT" was entered into between the parties effective for one year, specifying the commissions and salaries Ibarra was to receive during the first year of his employment with Missouri Poster. The parties did not enter into any other written Sales Agreement during Ibarra's employment.

In 1986, Missouri Poster changed Ibarra's salary and commission structure, eliminating his $20,000.00 salary and changing the 10% commission on all sales to 13½ commission on sales of silk screening and 10% commission on sales of lithography. Thereafter, Ibarra's commission percentage remained unchanged until March 1991.

One of Ibarra's accounts at Missouri Poster was United Missouri Bank. Ibarra sold silk screening to this account. In early 1991, another representative of Missouri Poster called on United Missouri Bank to sell bus advertising. Ibarra had never sold bus advertising to this account and a different buyer for the bank was responsible for purchasing bus advertising. United Missouri Bank was still considered Ibarra's client for all silk screening sales.

In February 1991, Missouri Poster made it known to its sales force that it intended to implement a new method of compensation. The purpose of the new compensation package was to maintain present accounts and increase new sales. Ibarra's sales had decreased from 1989 to 1990. In a memorandum circulated to all sales persons, Mike Ruff, president of Missouri Poster, notified sales personnel that they each had an annual goal of $300,000.00 in sales and meeting that goal would, in his opinion, require working ten to twelve hours a day, six days a week for the first nine months. Ibarra received a copy of this memorandum and believed it applied to him. The memorandum stated that the changes applied equally to all sales people. In 1988, 1989, and 1990, Ibarra exceeded $300,000.00 in sales and normally worked nine hours a day, five days a week.

Under the new compensation package effective March 1, 1991, commission on silk screening sales to new accounts was 15% and 8% on sales to old accounts. Commission on lithographic sales to new accounts was 11.5% and 8% on sales to old accounts. The new package provided an additional incentive of 2% of sales after $240,000.00, an additional 1% after $360,000.00 and another 1% after $480,000.00. The first year, each sales person received $9,000.00 in salary support.

In addition to the changes in the commission structure, Missouri Poster made changes to its organization adding inside sales assistance for the sales force, telemarketing personnel to aid in setting appointments for the sales people with new and dormant customers, a production manager to eliminate the necessity for the sales force to monitor production of products they sold, and a sales manager to operate as a go-between for the owners, production staff and sales force.

Ibarra reviewed his sales for 1990 and calculated the commission he would have received if 1990 had been under the new package and determined it would have been less than he actually received in 1990. Ibarra did not include the $9,000.00 salary. With the salary, Ibarra agrees that he would have made about the same in 1990 under both compensation packages but testified that after the first year, he would have earned less money with the same amount of sales. Ibarra charges that this is a breach of his Employment Agreement with Missouri Poster in that the new compensation package would restrict his opportunity to maintain or increase his current commission and salary level. Mark Erickson calculated Ibarra's 1990 commission using the new compensation package and determined that Ibarra would have earned more in 1990 if the new package had been in place.

On or about March 11, 1991, Ibarra resigned from Missouri Poster because he could not live with a reduction in income. Ibarra was unemployed until May 13, 1991, when he accepted employment with Graphic Communications, Inc. (GCI), a competitor of Missouri Poster. Some of the accounts Ibarra called on for GCI were customers of Missouri Poster. On May 31, 1991, Ibarra agreed to discontinue calling on those accounts. Ibarra's gross sales to all accounts at GCI for May, June, and July 1991 totaled $47,622.65. Mike Ruff testified that Missouri Poster's profit margin is "[p]robably about ten to fifteen percent." Mr. Ruff did not attempt to calculate actual damages of Missouri Poster.

After a trial to the court, the court entered the following Findings of Fact: Ibarra and Missouri Poster entered into a valid Employment Agreement that included Ibarra's covenant not to compete with Missouri Poster and the terms of the covenant were reasonable. The Sales Agreement entered into between the parties was effective from October 1, 1985 until September 30, 1986. Termination of the Sales Agreement also terminated the force and effect of the paragraph added to the Employment Agreement by Ibarra wherein Missouri Poster agreed not to restrict appellant's opportunity to maintain or increase his salary and commission. The parties never agreed that Missouri Poster could not change the sales and commission structure as it applied to all employees, including Ibarra. The new sales and commission structure did not restrict Ibarra's opportunity to maintain his

level of income through salaries and commission and did not constitute a breach of the Employment Agreement. Solicitation by Missouri Poster of United Missouri Bank for sales of bus advertising did not constitute a breach of the Employment Agreement by Missouri Poster because that account was never taken away from Ibarra. On May 13, 1991, Ibarra accepted employment with a direct competitor of Missouri Poster located within a 200 mile radius of Kansas City, Missouri, thereby breaching his covenant not to compete. Ibarra's gross sales at his new employment totalled $47,122.65. Based on Ibarra's sales, Missouri Poster was damaged in the amount of $7,143.39. Missouri Poster incurred reasonable attorney's fees in enforcing Ibarra's compliance with the terms of the Employment Agreement in the amount of $6,883.75.

Based on the preceding Findings of Fact, the court entered judgment against Ibarra and for Missouri Poster ordering Ibarra to cease and desist his employment relationship with GCI and to comply with the terms of the Employment Agreement and awarding Missouri Poster $7,143.39 in damages and $6,883.75 in attorney's fees.

■ In reviewing court-tried cases, this Court must affirm the judgment of the trial court unless there is no substantial evidence to support it, the judgment is against the weight of the evidence, or the judgment erroneously declares or applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976).

> Substantial evidence is that which a reasonable mind would accept as sufficient to support a particular conclusion, granting all reasonable inferences which can be drawn from it, and deferring all issues of weight and credibility, to the fact finder.

*Fujita v. Jeffries,* 714 S.W.2d 202, 206 (Mo. App.1986). Conflicts in the evidence are for the trial court to resolve and the facts and all reasonable inferences must be taken in accordance with the result reached by the trial court. *Arnett v. Johnson,* 689 S.W.2d 836, 838 (Mo.App.1985).

## I.

Ibarra raises eight points of error on appeal. For his first point, Ibarra claims the trial court erred in awarding $7,143.39 in damages to Missouri Poster because no substantial evidence supports the award and it was contrary to law. The trial court based its findings on testimony that, during May, June and July 1991, Ibarra's gross sales for GCI totalled $47,622.65 and Missouri Poster's profit margin was "probably" 10–15%. There was no testimony concerning to whom Ibarra made his sales, which of those sales, if any, were to customers of Missouri Poster, or whether those to whom Ibarra made sales were within the 200 mile radius of Kansas City specified in the covenant. There was no evidence that absent these sales by Ibarra, they would have been made by Missouri Poster. The president of Missouri Poster testified that he had not attempted to calculate the company's monetary loss.

■ To recover lost profits, the burden is on the claimant to prove the amount "with reasonable certainty by proof of facts from which anticipated profits can be estimated." *Fort Zumwalt School Dist. v. Recklein,* 708 S.W.2d 754, 756 (Mo.App. 1986) (quoting *Juengel Constr. Co. Inc. v. Mt. Etna, Inc.,* 622 S.W.2d 510, 514 (Mo. App.1981)). In addressing the certainty with which loss of profits must be shown, the Missouri Supreme Court has stated it is true in some cases that the claimant can only be required to produce all relevant facts tending to show the extent of damage and breach of contract resulting in damages is not to be excused simply because the damages may not be established with exact certainty. The amount of estimated loss of profits should, however, be supported by the best evidence available. *Coach House of Ward Parkway, Inc. v. Ward Parkway Shops, Inc.,* 471 S.W.2d 464, 472–73 (Mo.1971).

In support of his point, respondent directs us to a 1988 opinion of this court. *Gasser v. John Knox Village,* 761 S.W.2d 728 (Mo.App.1988). *Gasser,* however, is readily distinguishable. In *Gasser,* this court stated:

While lost profits must be proven with reasonable certainty, this court has recognized that "[i]n some cases, the evidence weighed in common experience demonstrates that a substantial pecuniary loss has occurred, but at the same time it is apparent that the loss is of a character which defies exact proof. In that situation, it is reasonable to require a lesser degree of certainty as to the extent of loss, leaving a greater degree of discretion to the court or jury."

*Id.* at 731 (quoting *Ranch Hand Foods, Inc. v. Polar Pak Foods, Inc.,* 690 S.W.2d 437, 444–45 (Mo.App.1985)). The case at bar is not one in which it was demonstrated or common experience demonstrates that a substantial pecuniary loss occurred. In fact, it is entirely possible that Missouri Poster suffered no damages because of Ibarra's breach of the covenant. *Gasser* also states, however, that the loss estimate may not be based on conjecture or speculation. *Id.* at 732.

In the case at bar, there is no evidence in the record concerning the amount of damages sustained by Missouri Poster as a result of Ibarra's breach of the covenant not to compete. The only evidence, and that from which the damage award was determined, is the amount of gross sales made by appellant while employed by GCI. What Missouri Poster has lost because of Ibarra's breach of covenant, not what Ibarra, or the company that employed him gained thereby, is the legal measure of damages in this case. *Pelz v. Eichele,* 62 Mo. 171, 180 (1876); *Coonis v. Rogers,* 429 S.W.2d 709, 715 (Mo.1968). The burden of proof is on Missouri Poster to prove which of the sales made by Ibarra at GCI it was entitled to recover as part of its loss.

Because the record is devoid of evidence showing which sales made by Ibarra were made to customers of Missouri Poster within a 200 mile radius of Kansas City and were, therefore, losses sustained by it, or that Missouri suffered any damages as a result of Ibarra's breach of the covenant, the award of damages in the amount of $7,143.39 is reversed.

## II.

In Point II, appellant claims the trial court erred in enforcing the covenant not to compete because the trial court's finding that the provisions of the contract protecting appellant's income had terminated and become inoperative in 1986, terminated the entire contract as a matter of law. The trial court found that paragraph 3 of page 4 of the agreement terminated on September 30, 1986. That paragraph states as follows:

> Employer will not restrict employee's opportunity to maintain or increase current levels of salaries and commission by changing the SALES AGREEMENT, unless discussed and agreed to by both parties.

According to testimony, the SALES AGREEMENT referred to is a document captioned "1985–1986 SALES AGREEMENT" which states, "The points in this agreement are for the years 1985 and 1986 starting October 1, 1985 and ending September 30, 1986 for Gerald Joseph Ibarra." The parties agree that they entered into no other written sales agreement after September 30, 1986.

Appellant claims that the Employment Agreement was not severable and, therefore, termination of paragraph 3, page 4 terminates the entire Agreement, including the covenant not to compete. Respondent points out, and we agree, that appellant did not raise this argument to the trial court. Appellant claims that case law suggests that he can raise an argument for the first time on appeal and cites as authority for that contention *Miller v. Pool and Canfield, Inc.,* 800 S.W.2d 120 (Mo.App. 1990). The *Miller* case states that a party appealing from judgment in a court-tried case may raise issues on appeal that were not raised in that party's motion for new trial. *Id.* at 124. Here, as in *Miller,* appellant seeks review of an issue not raised at trial and an appellate court may not address issues not raised at trial. *Id.* Our review is limited to those issues put before the trial court. *In re Marriage of Coulter,* 759 S.W.2d 642, 644 (Mo.App.1988). The argument advanced as appellant's Point II

was never presented to or passed on by the trial court and cannot be considered for the first time on appeal. Point II is denied.

### III.

In his Point III, appellant claims the trial court erred in concluding that Missouri Poster did not materially breach paragraph 3, page 4 of the Agreement by changing the commission structure. Appellant concedes that Missouri Poster has the right to change the commission structure, but argues that under the new commission package, he would have earned less money and, therefore, the new package restricts his opportunity to maintain or increase his level of salary and commission. As noted in section II above, this portion of the agreement was no longer in effect in 1991 and, therefore, Missouri Poster cannot have breached this portion of the agreement.

Further, the burden is on appellant to show that the changes implemented by respondent restricted his opportunity to earn the same or more money. The new commission structure became effective on March 1, 1991, and appellant resigned on or about March 11, 1991. The only figures submitted by appellant concerning his income under the new structure were commission projections based on his 1990 sales. There were several aspects of the new package designed to aid new sales and, thus, increase commissions. It would be pure conjecture to attempt to predict what sales appellant would have made in 1991. Appellant did not meet his burden of proof. Point III is denied.

### IV.

In Point IV, appellant asserts that the trial court erred in finding that Missouri Poster did not materially breach the Employment Agreement by taking away appellant's account with United Missouri Bank ("UMB"). In paragraph 1, page 4 of the agreement, Missouri Poster agreed not to take territory or clients away from Ibarra unless discussed and agreed to by both parties. Ibarra claims that UMB was his client and that Missouri Poster took that client away from him. Testimony indicated that Ibarra sold only silk screening to UMB and that another sales person called on a different buyer to sell bus advertising to UMB. UMB remained Ibarra's client for sales of silk screening.

Evidentiary conflicts are for the trial court to resolve and this court must take all reasonable inference in accordance with the result reached by the trial court. *Arnett v. Johnson*, 689 S.W.2d 836, 838 (Mo. App.1985). There was sufficient evidence to support the trial court's finding that Missouri Poster did not breach the agreement and that finding was not against the weight of the evidence. Appellant's Point IV is denied.

### V.

In Point V, appellant contends that the trial court erred in finding that Missouri Poster did not materially breach the Employment Agreement by adopting oppressive and unreasonable working conditions because the finding was against the weight of the evidence and not supported by substantial evidence. In implementing the new commission package, Ruff, President of Missouri Poster, circulated a memorandum to the sales force informing them that the new goal for each sales person is $300,000.00 in sales per year. The memorandum states, "To meet the goals you are responsible for, we feel it will require 10–12 hours a day, 6 days a week for the first 9 months."

As evidence that this schedule applied to Ibarra, appellant notes that the memorandum was addressed to "ALL SALESMEN." Undisputed evidence showed that Ibarra exceeded the goal amount of sales in 1986, 1988, 1989, and 1990. Therefore, sufficient evidence existed from which the trial court could find that the "10–12 hours a day, 6 days a week" schedule did not apply to appellant. Further, there was no evidence that Missouri Poster had taken any action to enforce the new work schedule against Ibarra. Point V is denied.

**42**

## VI.

In Point VI, appellant argues that because Missouri Poster materially breached the Employment Agreement, as argued in appellant's Points III, IV, and V, Missouri Poster was barred from enforcing the covenant not to compete. Because we find no breach by Missouri Poster, Point VI is denied.

## VII.

In Point VII, appellant contends that judgment for Missouri Poster is inappropriate because it did not have a protectible stock of customers. Appellant failed to make this argument to the trial court. Therefore, for the reasons stated above in section II, we decline to consider this argument. Point VII is denied.

## VIII.

In his final point, appellant complains that the trial court erred in overruling his objections (1) to the defendant's testimony that appellant could not make less money under the new compensation package because the testimony was speculative and without foundation and (2) to exhibit 31 and testimony surrounding it because it was speculative and without proper foundation and because Erickson failed to change his deposition testimony denying that he had made any income projections. Assuming *arguendo* that there is a duty to update deposition testimony, which is quite doubtful, this court is unable to entertain this point because the deposition transcript has not been provided for our review. Further, our decision in section III above that Ibarra failed to meet his burden of proving that his opportunity to maintain his level of salary was restricted by the changes, renders appellant's Point VIII moot.

The judgment award of damages to respondent and against appellant in the amount of $7,143.39 is reversed. As to all other matters, judgment of the trial court is affirmed.

All concur.